971 P.2d 207

The CITY OF TUCSON, Appellee,

v.

Kenneth Roy RINEER, Appellant.

No. 2CA–CR97–0407.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 27, 1998.

Review Denied Jan. 12, 1999.

Thomas J. Berning, Tucson City Attorney, by R. William Call, William F. Mills, and Dennis McLaughlin, Tucson, for Appellee.

David T. Hardy and Edmund Kahn, Tucson, for Appellant.

*OPINION*

ESPINOSA, Judge.

¶ 1    After entering Himmel Park with a handgun, appellant Kenneth Rineer was cited for violating Tucson City Code § 21-3(5)(2), which prohibits using or possessing firearms within Tucson city parks. Rineer moved to dismiss the complaint, arguing the ordinance is preempted by A.R.S. §§ 13-3102, 13-3107, and 13-3108(A) and violates his constitutional right to bear arms under article II, § 26 of the Arizona Constitution. The city court granted Rineer's motion, finding the ordinance "unconstitutional in that the state has preempted the control of firearms within the state." The City of Tucson appealed the ruling to Pima County Superior Court, which reversed the city court's ruling, concluding that the city parks firearms prohibition is not preempted by state law and does not violate the Arizona Constitution. This appeal followed. We have jurisdiction pursuant to article VI, § 16 of the Arizona Constitution and A.R.S. § 22-375. *State v. Holland,* 153 Ariz. 536, 738 P.2d 1143 (App.1987). Because we find the ordinance neither conflicts with state law nor violates Rineer's constitutional rights, we affirm the superior court's ruling.

**Preemption**

¶ 2    The City of Tucson is a charter or "home rule" city organized pursuant to article XIII, § 2 of the Arizona Constitution which, in pertinent part, provides, "Any city containing, now or hereafter, a population of more than three thousand five hundred may frame a charter for its own government consistent with, and subject to, the Constitution and the laws of the State...." Accordingly, the city may exercise all powers granted by its charter, provided that the exercise is not inconsistent with either the constitution or

general laws of the state. *Jett v. City of Tucson*, 180 Ariz. 115, 882 P.2d 426 (1994). Whether state law preempts a city ordinance is a question of law that we review de novo. *See Kadish v. Arizona State Land Dep't*, 177 Ariz. 322, 868 P.2d 335 (App.1993).

¶ 3 Our supreme court has said that, in Arizona,

"Both a city and state may legislate on the same subject when that subject is of local concern or when, though the subject is not of local concern, the charter or particular state legislation confers on the city express power to legislate thereon; but where the subject is of statewide concern, and the legislature has appropriated the field by enacting a statute pertaining thereto, that statute governs throughout the state, and local ordinances contrary thereto are invalid."

*Flagstaff Vending Co. v. City of Flagstaff*, 118 Ariz. 556, 559, 578 P.2d 985, 988 (1978), *quoting Phoenix Respirator & Ambulance Serv., Inc. v. McWilliams*, 12 Ariz.App. 186, 188, 468 P.2d 951, 953 (1970). For this court to conclude that state legislation has completely occupied a particular field, " '[t]he existence of a preempting policy must be clear. Also, the assertedly competing provisions in question must be actually conflicting, rather than capable of peaceful coexistence. Mere commonality of some aspect of subject matter is insufficient . . . .' " *Jett*, 180 Ariz. at 121, 882 P.2d at 432, *quoting City of Prescott v. Town of Chino Valley*, 163 Ariz. 608, 616, 790 P.2d 263, 271 (App.1989), *vacated in part on other grounds*, 166 Ariz. 480, 803 P.2d 891 (1990).

¶ 4 As we understand a number of overlapping and sometimes recondite arguments, Rineer contends that the regulation of firearms is exclusively a matter of statewide concern that the legislature has both expressly and implicitly preempted, citing A.R.S. § 13–3108(A) as evincing the legislature's intent as well as "express command" to completely occupy the field. That statute

states: "Ordinances of any political subdivision of this state relating to the transportation, possession, carrying, sale and use of firearms in this state shall not be in conflict with this chapter." Rineer argues "it is not necessary to assess the traditional standards of preemption" because "Title 13 forbids a range of personal conduct, and by omission, permits the remainder;" therefore, any local regulation not expressly authorized by the legislature is necessarily "in 'conflict with' these commands."[1] We cannot agree with this broad premise or conclusion. Under Rineer's logic, preemption of local laws might be similarly read into virtually any state statutory scheme. The test for preemption, however, is not one of negative inference. Rather, the policy of preemption must be clear. *Jett*; *Town of Chino Valley*. Here, no preemptive inference is warranted because on its face, the statute recognizes that there may be parochial legislation in the broad areas enumerated. *Compare State v. Loughran*, 143 Ariz. 345, 693 P.2d 1000 (App. 1985) (no legislative intent to appropriate field in statutory language that cities and towns not prohibited from enacting and enforcing prostitution ordinances at least as stringent as statute); *City of Seattle v. Ballsmider*, 71 Wash.App. 159, 856 P.2d 1113 (Wash.App.1993) (although Washington statute preempted field of firearms regulation, it expressly permitted consistent local laws and additional statute allowed local governments broad authority to regulate firearms discharge in areas where people or property would be endangered). *See also* Op. Att'y Gen. I78–274 (1978)[2] (§ 13–3108 "clearly indicates that the legislature did not intend totally to preempt the field of firearms regulation").

¶ 5 Rineer argues, however, that "[t]he question here is purely one of statutory construction," and the statute's history shows "a legislative purpose of moving localities out of the business of firearms regulation," particularly the 1983 addition of subsection B to

---

1. The City asserts that Rineer has waived this argument, claiming it "represents a new argument on appeal to this Court." We address it on its merits because we find it was sufficiently, if only generally, raised below.

2. Although advisory, opinions of the Attorney General may be considered. *Hillhouse v. Rice School Dist. No.20*, 151 Ariz. 348, 727 P.2d 843 (App.1986).

§ 13–3108, which prohibits political subdivisions of the state from requiring "the licensing or registration of firearms or prohibit[ing] the ownership, purchase, sale or transfer of firearms." We find this argument without merit for several reasons. First, subsection B is specific in its prohibitions and does not forbid local regulation of possessing or carrying weapons, something that the legislature could have easily included had it so intended. *Jett.* Indeed, when the legislature has intended to preclude local legislation, it has done so expressly. *See* A.R.S. §§ 3–377 (article governing pesticide control "not subject to further local regulation"); 5–412 (taxation of bingo "preempted by the state"); 20–226(B) (with certain enumerated exceptions, "the state preempts the field" imposing taxes upon insurers and their agents); 33–1329(A) ("the power to control rents on private residential property is preempted by the state").

¶ 6    Second, if § 13–3108(A) was truly "an express command" or an expression of the legislature's "objective" to "be the last word on the matter, precluding further regulation by localities except as it might expressly allow," as Rineer argues, then the addition of subsection B would make little sense. That provision would be superfluous in removing specified areas from the reach of local regulation when § 13–3108(A) already accomplished that result. *See Vega v. Morris*, 184 Ariz. 461, 910 P.2d 6 (1996) (the legislature generally does not include statutory provisions that are redundant, inert, superfluous or contradictory). To the contrary, the addition of subsection B is entirely consistent with and reflects the legislature's intent to allow local firearms regulation except in areas where it has specifically spoken.

■ ¶ 7    Finally, no construction or interpretation of § 13–3108(A) as urged by Rineer is necessary, or even permissible, because under a straightforward reading of the statute it requires only that local government's firearms regulations not be in conflict with those of the state. "If the language of the statute is plain, the court looks no further." *State v. Jones*, 188 Ariz. 388, 392, 937 P.2d 310, 314 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 705, —— L.Ed.2d —— (1998).

■ ¶ 8    Rineer additionally contends that preemption is implied because "the State has comprehensively regulated the field," citing several statutes governing "person, type, manner, time and place of arms possession and use." [3]  The "mere fact" that a legislative body has enacted a detailed regulatory scheme, however, "does not by itself imply preemption." *Kadera v. Superior Court*, 187 Ariz. 557, 560, 187 Ariz. 557, 931 P.2d 1067, 1070 (App.1996). Moreover, this argument ignores the plain language of § 13–3108(A) and the implication of subsection B, which evince the legislature's intent not to exclusively occupy the field, but rather to permit local ordinances "relating to the transportation, possession, carrying, sale and use of firearms" provided they do not conflict with title 13, chapter 31, A.R.S. *See Hernandez–Gomez v. Leonardo*, 185 Ariz. 509, 917 P.2d 238 (1996) (no implied federal preemption of plaintiff's state common law claim when statute indicated Congress did not intend to exclusively occupy field, no conflict existed between state and federal law, it was possible to comply with both state and federal requirements, and state law no obstacle to congressional objectives).

¶ 9    Because Rineer has not shown, and we do not find, any legislative intent, either express or implied, to prohibit all local firearms regulation, we turn to the question whether Tucson City Code § 21–3(5)(2) nevertheless conflicts with any of the provisions of title 13, chapter 31, A.R.S. *See* Ariz. Const. article XIII, § 2; *Jett*; *see also State ex rel. Baumert v. Phoenix Mun. Court*, 124 Ariz. 159, 602 P.2d 827 (App.1979) (if no conflict with state statute on same topic, ordinance may parallel or even go beyond statute's provisions).

---

**3.**  A.R.S. §§ 13–3102(A)(1) (carrying concealed weapon without a permit), 13–3102(A)(2) (carrying concealed weapon "in or on a means of transportation"), 13–3102(A)(3) (manufacture, possession, transportation, sale, or transfer of a "prohibited weapon"), 13–3102(A)(4) (possession by certain persons), 13–3102(A)(10) (entering any "public establishment" or "public event" carrying weapon after requested by operator or sponsor to remove and store in their control), 13–3102(A)(11) (possession at public polling places), and 13–3107 (discharge within municipalities).

¶ 10 At the outset, we note that Rineer has failed to identify any specific statutory provision that the city ordinance contravenes, other than the general prohibition of § 13–3108(A), which he maintains precludes any and all local regulation of firearms not expressly authorized by the legislature.[4] As we concluded above, subsection A does not have that effect. Rineer, however, cites Attorney General Opinion No. I78–274, which opined that a broadly worded Prescott ordinance was in conflict with § 13–3108(A), citing the California Supreme Court case of *Galvan v. Superior Court*, 70 Cal.2d 851, 76 Cal.Rptr. 642, 452 P.2d 930 (Cal.1969).[5] Assessing Prescott's prohibition of firearms possession "outside or off" a person's real property, the attorney general inferred that the sole objective of the ordinance was to regulate the possession of firearms, and in the absence of reference " 'either to time or place,' " was an attempt to regulate "not a local affair, but rather a matter regarding which the rules 'should be uniform throughout the state.' " Op. Att'y Gen. I78–274 (1978), *quoting Clayton v. State*, 38 Ariz. 135, 148–49, 297 P. 1037, 1042 (1931).

¶ 11 Unlike the expansive Prescott ordinance, Tucson City Code § 21–3(5)(2) is part of a body of ordinances governing conduct only within the city's parks and prohibits firearms solely within those boundaries, a legitimate and narrow local concern. *See Maricopa County v. Maricopa County Mun. Water Conservation Dist. No. 1*, 171 Ariz. 325, 830 P.2d 846 (App.1991) (municipalities are permitted to establish, maintain and regulate parks and public grounds); *Hiller v. City of Los Angeles*, 197 Cal.App.2d 685, 17 Cal.Rptr. 579 (App.1961) (use of city park lands is municipal affair). As the Washington Court of Appeals has stated, "While an absolute and unqualified local prohibition against possession of a pistol by the holder of a state permit would conflict with state law, an ordinance which is a limited prohibition reasonably related to particular places and

necessary to protect the public safety, health, morals and general welfare is not preempted by state statute." *Second Amendment Foundation v. City of Renton*, 35 Wash.App. 583, 668 P.2d 596, 599 (Wash. App.1983). *See also Junction City v. Lee*, 216 Kan. 495, 532 P.2d 1292, 1296 (Kan.1975) ("Weapons control is an area of cities' concern."); *Township of Chester v. Panicucci*, 62 N.J. 94, 299 A.2d 385, 390 (N.J.1973) (municipalities have power to regulate use of firearms "in the interest of public safety"). We see no conflict between the Tucson ordinance and the provisions of § 13–3108, which, as the superior court noted, do not address the possession or carrying of firearms in city parks. *Cf. State ex rel. Baumert* (conflict found where indecent exposure ordinance purported to redefine offense specifically delineated by state statute). Accordingly, we conclude that Tucson City Code § 21–3(5)(2) is neither preempted by nor in conflict with state law.

### Constitutionality

¶ 12 Rineer next contends that the Tucson ordinance violates his "right to bear arms in defense of oneself" as guaranteed by article II, § 26 of the Arizona Constitution. That section provides: "The right of the individual citizen to bear arms in defense of himself or the State shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain, or employ an armed body of men." The constitutionality of a statute is a matter of law that we review de novo. *State v. Buccini*, 167 Ariz. 550, 810 P.2d 178 (1991). We begin with the presumption that the statute is constitutional. *State v. Tocco*, 156 Ariz. 116, 750 P.2d 874 (1988). "The party challenging the validity of a statute has the burden of overcoming that strong presumption." *Id.* at 119, 750 P.2d at 877.

¶ 13 Arizona's courts have held that article II, § 26 does not provide an absolute

---

4. Although Rineer cited some specific statutes below as being conflicted by the ordinance, he has abandoned them on appeal in favor of the more general arguments addressed herein.

5. *Galvan's* three-part preemption test has never been adopted in Arizona. Moreover, in that

case, the California court concluded that a municipal gun registration ordinance did not conflict with a statute prohibiting gun permits or licenses and was not preempted by state firearms legislation.

right to bear arms in self-defense, but only a qualified right. *State v. Moerman,* 182 Ariz. 255, 895 P.2d 1018 (App.1994); *Dano v. Collins,* 166 Ariz. 322, 802 P.2d 1021 (App.1990).

> "The right guarantied to the citizen, is not to bear arms upon all occasions and in all places, but merely 'in defence of himself and the State.' The terms in which this provision is phrased seem to us, necessarily to leave the Legislature the authority to adopt such regulations of police, as may be dictated by the safety of the people and the advancement of public morals."

*Id.* at 324, 802 P.2d at 1023, *quoting State v. Reid,* 1 Ala. 612 (1840). Thus, as stated in *Moerman,* the plain wording ·of article II, § 26

> suggests that people do not have the right to bear arms in any manner and under all circumstances in Arizona. [*Dano,* 166 Ariz. at 323, 802 P.2d at 1022. Second, Defendants' denial that the delegates at Arizona's Constitutional Convention could have understood the right to bear arms as a qualified right ignores the state of the law at that time. Immediately before and after .the adoption of Arizona's Constitution, carrying concealed weapons was prohibited. In fact, the 1913 Arizona Penal Code mirrored the 1901 Penal Code of the Arizona Territory, providing "[i]t shall be unlawful for any person (except a peace officer in actual service and discharge of his duty), to have or carry concealed on or about his person, any pistol or other firearm...." Arizona Revised Statutes, Penal Code, Title XII, § 426 (1913); Revised Statutes of Arizona Territory, Penal Code, Title XI, § 382 (1901).

182 Ariz. at 259, 895 P.2d at 1022.[6] Thus, "courts have upheld the police power of the state, through its legislature, to impose reasonable regulatory controls over the state constitutional right to bear arms in order to promote the safety and welfare of its citizens." *Dano,* 166 Ariz. at 324, 802 P.2d at 1023.

¶ 14  Rineer contends, however, that any Arizona cases suggesting that the right of the individual to bear arms is qualified have been limited to "the context of statutes which did not impair the right of a citizen to 'defend himself,'" and that "regulation which prevents defense of self is impermissible." We find this argument unpersuasive and incorrect. In *State v. Rascon,* 110 Ariz. 338, 519 P.2d 37 (1974), our supreme court considered an appeal from a revocation of probation triggered by the discovery of a pistol in the probationer's possession. The court rejected the argument that the probation condition prohibiting possession of firearms violated article II, § 26 noting that similar statutory provisions had been found to not infringe on the constitutional right to bear arms. *Accord Morgan v. State,* 943 P.2d 1208 (Alaska App. 1997), and *State v. Robinson,* 217 Or. 612, 343 P.2d 886 (Or.1959) (same holding under similar state statutes and constitutional provisions). Perhaps more importantly, we disagree that Rineer's "right to defend himself" is meaningfully impaired as a result of the limited burden imposed by the Tucson parks ordinance.

¶ 15  In *City of Renton,* the Washington Court of Appeals addressed a constitutional challenge to a municipal ordinance prohibiting the possession of firearms in establishments where alcoholic beverages are served.[7] Recognizing that the right to bear arms in self-defense is not absolute, the court found that right only "minimally reduced" by the narrowly drawn prohibition and held the ordinance a reasonable exercise of police power because the benefit to public safety outweighed the limited infringement involved. 668 P.2d at 598. Similarly, in *Robertson v. City and County of Denver,* 874 P.2d 325 (Colo.1994), the plaintiff claimed an ordinance banning the possession, sale, or manufacture of specified assault weapons within

---

**6.** Federal courts, too, have provided historical perspective on the right to bear arms, noting that " '[w]eapon bearing was never treated as anything like an absolute right by the common law. It was regulated by statute as to time and place as far back as the Statute of Northampton in 1328 and on many occasions since.' " *United States v. Warin,* 530 F.2d 103, 107 (6th Cir. 1976), *quoting United States v. Tot,* 131 F.2d 261, 266 (3d Cir.1942).

**7.** Article 1, § 24 of the Washington Constitution, governing the right to bear arms, is identical to article II, § 26 of this state's constitution.

the city and county of Denver violated Colorado's constitutional right to bear arms in self-defense. The Colorado Supreme Court upheld the ordinance as reasonably related to the legitimate government interest in crime prevention and a valid exercise of police power, concluding that, although the ordinance "undoubtedly limits the ways in which the right to bear arms may be exercised, the barriers thereby created do not significantly interfere with this right," and the ordinance "does not impose such an onerous restriction on the right to bear arms as to constitute an unreasonable or illegitimate exercise of the state's police power." *Id.* at 333.

¶ 16 Accordingly, an individual's right to bear arms in self-defense and the government's duty to enact reasonable regulations to protect the health, safety and welfare of its citizens must be balanced. *Dano.* Contrary to Rineer's unsupported contention at oral argument, if it can be shown that an ordinance is directed at a legitimate legislative purpose and that the means by which the city seeks to achieve that purpose are reasonable, then the ordinance is a proper exercise of the city's police power. *Id.; see also Campbell v. Superior Court,* 106 Ariz. 542, 479 P.2d 685 (1971). "However, a legitimate governmental purpose in regulating the right to bear arms cannot be pursued by means that broadly stifle the exercise of this right where the governmental purpose can be more narrowly achieved." *Dano,* 166 Ariz. at 323, 802 P.2d at 1022. *Cf. City of Las Vegas v. Moberg,* 82 N.M. 626, 485 P.2d 737 (N.M.App.1971) (ordinance prohibiting carrying a deadly weapon anywhere in city violated right to bear arms).

¶ 17 Chapter VII, § 1(32) of the Tucson City Charter states that the mayor and council have the power to "adopt and enforce by ordinance all such measures ... necessary for the promotion and protection of the health, comfort, safety, life, welfare and property of the inhabitants of the city, [and for] the preservation of peace and good order." Moreover, Chapter IV, § 1(26) of the charter authorizes the city to own and control land for parks and recreation. The prohibition against firearms is part of a comprehensive ordinance regulating a myriad of matters within the city's parks, including hunting, fishing, golfing, driving, camping, parking, animals, and vandalism. *See* Tucson City Code § 21–3. The subsection at issue here forbids not only the use, carrying, or possession of firearms, but also "air rifles, spring guns, bows and arrows, slings or any other forms of weapons potentially injurious to wildlife and dangerous to human activity." Tucson City Code § 21–3(5)(2). As the superior court noted, "A city park is a place where Tucson residents gather and their children play." It requires no leap of logic to deduce that keeping dangerous weapons out of a public park directly reduces the possibility of armed conflict as well as accidents therein and substantially advances the safety of all who go there.

¶ 18 Based on the above considerations and the city's charter provisions, we agree with the superior court's conclusions that the ordinance was enacted "for the promotion of public safety and for the public welfare," and has "a legitimate purpose and is reasonably restricted to specific areas in the city." Numerous courts have reached similar conclusions in analogous settings. *See State v. Lake,* 121 N.M. 794, 918 P.2d 380 (N.M.App. 1996) (defendant's right to bear arms not violated by prosecution for unlawful carrying of firearm into convenience store licensed to sell alcoholic beverages); *State v. Barnes,* 42 Wash.App. 56, 708 P.2d 414 (Wash.App.1985) (statute prohibiting possession of weapons by prisoners in penal institutions reasonable regulation of constitutional right to bear arms); *City of Renton.* Indeed, some courts arguably have gone well beyond the particularized restriction we uphold here. *See, e.g., Hyde v. City of Birmingham,* 392 So.2d 1226, 1228 (Ala.Crim.App.1980) (approving municipal ordinance prohibiting firearms possession within city when tendency of such possession would "promote a breach of the peace" because ordinance intended to promote personal security and decrease violence); *Robertson; Kalodimos v. Village of Morton Grove,* 103 Ill.2d 483, 83 Ill.Dec. 308, 470 N.E.2d 266 (Ill.1984) (qualified ordinance prohibiting possession of operable handguns within village proper exercise of police power and not violative of constitutional right to bear arms); *People v. Wilkes,* 31 Ill.App.3d 902, 334

N.E.2d 910 (Ill.App.1975) (statute criminalizing possession of firearms within municipalities valid limitation on the constitutional right to bear arms because of state's interest in controlling crime); *City of Cape Girardeau v. Joyce*, 884 S.W.2d 33, 34 (Mo.App. 1994) (ordinance prohibiting possession of firearms "readily capable of lethal use" within city did not violate right to bear arms); *State v. Dawson*, 272 N.C. 535, 159 S.E.2d 1, 6 (N.C.1968) (ban on "unusual and dangerous weapons" found constitutional); *State v. Spencer*, 75 Wash.App. 118, 876 P.2d 939 (Wash.App.1994) (statute criminalizing carrying, exhibiting, displaying, or drawing firearm in manner, time, and place manifesting intent to intimidate or warranting alarm for safety of others upheld as minimally restricting individual rights and promoting public safety).

¶ 19    In sum, the principle that reasonable limitations on the right to bear arms do not offend individual constitutional rights is too well-embedded in the jurisprudence of Arizona and sister states to be the subject of great debate.    Rineer has failed to demonstrate that the city's ban on firearms in its public parks is unreasonable or overbroad; therefore, his constitutional argument fails as well.    Moreover, his assertion that the city's action strips him of his ability to defend himself is severely undercut by the fact that he can readily avoid the burden of the city's location-specific prohibition by simply walking around the park with his firearm, instead of through it.    Thus, although the ordinance may limit Rineer's right to bear arms, "it neither frustrates nor impairs it." *Moerman*, 182 Ariz. at 259, 895 P.2d at 1022.

¶ 20    Affirmed.

PELANDER, P.J., and HOWARD, J., concur.