3 P.3d 1018

**BABE'S CABARET, a d/b/a of Stephanie's Babes, Inc. and Diamond Girls a d/b/a of Wisnowski, Inc., Plaintiffs–Appellants,**

v.

**CITY OF SCOTTSDALE, a municipal corporation, Defendant–Appellee.**

**No. 1 CA–CV 98–0102.**

Court of Appeals of Arizona, Division 1, Department A.

Nov. 23, 1999.

As Amended Feb. 18, 2000.

---

Weston, Garrou & DeWitt by John H. Weston, G. Randall Garrou, Colin C. Holley, Los Angeles, CA and Ivan S. Abrams, Bisbee, for Plaintiff–Appellant Babe's Cabaret.

Broening Oberg Woods Wilson & Cass by Richard E. Chambliss, Phoenix, for Plaintiff–Appellant Diamond Girls.

City of Scottsdale by Amy L. Lieberman, Scottsdale, and Copple Chamberlin &

Boehm, P.C. by Scott E. Boehm, Phoenix, for Defendant–Appellee.

## OPINION

GERBER, Judge.

¶ 1 Appellants challenge a Scottsdale ordinance regulating erotic entertainment at establishments serving liquor. We must determine if state alcohol law has preempted local regulation in this area.

### Facts and Procedural History

¶ 2 Stephanie's Babes, Inc., d.b.a. Babe's Cabaret, and Wisnowski, Inc., d.b.a. Diamond Girls (the appellants), are establishments licensed by the State Department of Liquor Licenses and Control (the department) to sell intoxicating liquor. They also feature erotic entertainment. In 1993, Scottsdale adopted Ordinance No. 2521, regulating sexually oriented businesses. In 1994, both Scottsdale and the Arizona Licensed Beverage Association asked the legislature to clarify whether local control of erotic entertainment was preempted by statewide law. For its part the city sought explicit legislation to authorize municipalities to regulate local erotic entertainment at licensed premises. After the legislature rejected a bill that would have explicitly preempted local control, it adopted this measure:

A municipality may enact and enforce ordinances regulating the age and conduct of erotic entertainers at licensed premises in a manner at least as restrictive as rules adopted by the director.

Arizona Revised Statutes Annotated ("A.R.S.") § 4–112(H), as enacted by Laws

1994, Ch. 373, § 2. At the same time, the legislature added the following section:

A city, town or county shall not adopt ordinances or regulations in conflict with the provisions of this title including, but not limited to, ordinances or regulations pertaining to hours and days of liquor sales and ordinances or regulations that conflict with the definition of restaurant contained in this title.

A.R.S. § 4–224, as enacted by Laws 1994, Ch. 373, § 7.

¶ 3 In 1995, in response to this legislation, Scottsdale added to its City Code ("S.C.C.") regulations addressing "sexually oriented businesses" in provisions we refer to here generally as "the Ordinance." [1] Violations of the Ordinance constitute class 1 misdemeanors, punishable by six months imprisonment and a $2,500 fine, or $20,000 if the licensee is an "enterprise." S.C.C § 16–257(a), (b). If a sexually oriented business operates without a license, the Ordinance provides that it constitutes a public nuisance, subject to abatement by suit for injunctive relief. *See* S.C.C § 16–257(c).

¶ 4 After adoption of the Ordinance, the appellants challenged it as conflicting with the statutes adopted by the Arizona Legislature regarding liquor licensees. The superior court granted summary judgment for the city. The appellants appealed. We have jurisdiction under A.R.S. section 12–2101(B).

### Discussion

¶ 5 The appellants first argue that under Title 4, the legislature has preempted local control over erotic subject matter. They ar-

---

1. Among other things, Ordinance No. 2804 requires persons conducting sexually oriented businesses to obtain a license, §§ 16–239, 16–240; requires managers to obtain a permit, § 16–241, and a photo identification card, § 16–246; requires persons providing "adult services" to obtain a permit, § 16–242, and a photo identification card, § 16–246; requires that the permits or certified copies be maintained on the premises available for inspection, § 16–247(a); requires that adult services only be provided on a stage elevated at least eighteen inches above floor level, separated from patrons by at least three feet with a barrier at least three feet above floor level, § 16–247(d); prohibits performance of sexual activities, § 16–247(e); limits the hours that adult

services may be provided, § 16–247(f); requires that adult services be performed only in areas in direct line of sight of a manager's station, located in an area where patrons have access, § 16–247(g); requires that a manager be on premises, wearing the photo identification, at all times when adult services are provided, § 16–247(i); prohibits employees from touching certain areas of the body of patrons, and prohibits patrons from touching the same areas of the body of employees, § 16–247(j); prohibits patrons from placing money on the body or costume of adult services providers, § 16–247($l$); and provides that managers may not knowingly permit violations of the rules, § 16–247(m).

gue that A.R.S. section 4–112(H) is invalid as anathema to the comprehensive statewide statutory scheme for liquor. Alternatively, assuming section 4–112(H)'s validity, they argue that various sections of the Ordinance are invalid because they exceed the limited scope of local regulation the statute allows. Finally, they argue that two provisions of the Ordinance conflict with a specific statute.

¶ 6 The facts are not in dispute and the issues are matters of statutory construction that we review without deference to the trial court's decision. *See City of Tucson v. Rineer*, 193 Ariz. 160, 162, 971 P.2d 207, 209, (App.1998); *see Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 311, 823 P.2d 1317, 1319 (App.1991).

¶ 7 Arizona cities and towns are state-created municipal corporations having "no greater powers than those delegated to them by the constitution and the general laws of the state." *City of Scottsdale v. Superior Court*, 103 Ariz. 204, 205, 439 P.2d 290, 291 (1968). A city may "exercise all powers granted by its charter, provided that the exercise is not inconsistent with either the constitution or general laws of the state." *Rineer*, 193 Ariz. at 161–62, 971 P.2d at 208–9; *see Jett v. City of Tucson*, 180 Ariz. 115, 118, 882 P.2d 426, 429 (1994).

¶ 8 The appellants contend that all local control is preempted because the state has co-opted the regulation of intoxicating liquors. *See Mayor & Common Council v. Randall*, 67 Ariz. 369, 372–75, 196 P.2d 477, 479–81 (1948). For its part the city relies on the specific permission the legislature granted to municipalities to legislate in this area under A.R.S. section 4–112(H), quoted above. Anticipating this defense, the appellants respond that section 4–112(H) is invalid because the state's regulation of liquor is so comprehensive that no local control is possible.

¶ 9 The appellants rely on *Randall* in which the superior court struck down an ordinance limiting the number of liquor licenses that could be issued within the City of Prescott. On appeal, the supreme court held that the licensing and regulation of the liquor trade fell exclusively under Chapter 72 of the Arizona Code Annotated (1939), which created the Department of Liquor Licenses and Control. The court rejected an argument by the Prescott mayor and common council that the legislature had specifically authorized local authority in the very same chapter. The supreme court instead held that local control was preempted:

> [T]he legislature, in creating the department of liquor licenses and control, intended to create and establish state-wide control over the traffic in intoxicating liquors. It is a complete and comprehensive code. . . .
>
> . . . .
>
> . . . That portion of section 72–112 which authorizes incorporated cities and towns to license and regulate the liquor traffic is utterly inconsistent and cannot be harmonized or reconciled with the general spirit and purpose of the entire chapter relating to spirituous liquors. . . . To authorize cities and towns to regulate the liquor traffic would emasculate the entire state liquor code and create an absurd and ludicrous situation. . . .
>
> . . . .
>
> We, therefore, conclude that the attempted delegation of authority to incorporated cities and towns to regulate the manufacture, sale, possession, and disposal of spirituous liquors within their limits is invalid for the reason that to give it full effectiveness would result in an absurdity and is clearly at variance with the whole theory of state control as evidenced by all of the provisions of the code relating to spirituous liquors.

*Id.* at 374–75, 377, 378, 196 P.2d at 481, 482, 483. *See also Keller v. State*, 46 Ariz. 106, 47 P.2d 442 (1935) (state highway code occupied the field, preempting Phoenix's reckless driving ordinance).

¶ 10 From *Randall*, appellants conclude that because of the comprehensive nature of statewide regulation of the liquor trade, the Ordinance is invalid as exceeding the authority granted in A.R.S. section 4–112(H).

¶ 11 When an issue raises both local and statewide concern, both the city and the state may enact relevant laws. However,

when the issue is of statewide concern and the legislature has "appropriated the field by enacting a statute pertaining thereto, that statute governs throughout the state, and local ordinances contrary thereto are invalid." *Flagstaff Vending Co. v. City of Flagstaff*, 118 Ariz. 556, 559, 578 P.2d 985, 988 (1978) (quoting *Phoenix Respirator & Ambulance Serv., Inc. v. McWilliams*, 12 Ariz.App. 186, 188, 468 P.2d 951, 953 (1970)); *accord Randall*, 67 Ariz. at 372, 196 P.2d at 479. State preemption of local legislation raises a question of legislative intent, which can be either express or implied:

> The principle of preemption is applied when a political subdivision creates law that is in conflict with the generally applicable law of the sovereign. The state's law must be of statewide concern, and the state's lawmakers must have intended to appropriate the field. The existence of a preempting policy must be clear. Also, the assertedly competing provisions in question must be actually conflicting, rather than capable of peaceful coexistence. Mere commonality of some aspect of subject matter is insufficient....

*City of Prescott v. Town of Chino Valley*, 163 Ariz. 608, 616, 790 P.2d 263, 271 (App.1989), *vacated in part on other grounds*, 166 Ariz. 480, 803 P.2d 891 (1990) (citations omitted). Absent a clear manifestation of legislative intent to preclude local control, there is no preemption. *See Jett*, 180 Ariz. at 121, 882 P.2d at 432.

¶ 12 However, statewide control over intoxicating liquors does not mean that municipalities are forbidden to enact any law having a *collateral* effect on businesses licensed by the Department. Holding otherwise would exempt licensees from a broad variety of local laws, including zoning, health and building codes. *Randall* certainly does not support such a notion. As we noted in *City of Prescott v. Town of Chino Valley*, preemption cannot be predicated on "the mere commonality of subject matter."

¶ 13 No indications exist that the legislature intended to preempt local regulation of erotic entertainment at licensed liquor establishments. Only one pertinent statute exists in the liquor title:

> The director *may* ... [r]egulate the age and conduct of erotic entertainers at licensed premises. The age limitation governing these erotic entertainers may be different from other employees of the licensee.

(Emphasis added.) A.R.S. § 4–112(G)(6). One statute that allows—but does not require—the director to regulate on a subject falls far short of occupying the field. Furthermore, no state agency exists for regulating erotic entertainment, as there is for liquor.

¶ 14 Besides the lack of comprehensive legislation on erotic entertainment, the legislature has expressly provided in A.R.S. section 4–112(H) that municipalities *may* legislate in this area. We find no intent, express or implied, to preempt local control; the contrary seems to be the case.[2] The appel-

---

2. We cite but a few among numerous instances of evidence of legislative intent. Representative Nichols on March 22, 1994 said he interpreted the relevant language to allow a city "in [its] judgment and its wisdom [to] put *tighter controls* on the erotic entertainers in these places than the state would apply." (Emphasis added.) Representative Nichols asked the Director of the Arizona Department of Liquor Licenses and Control to confirm that the new amendment:

> ... represents the philosophy of the department ... that *localities should have the capacity to be more restrictive than the state* if they so choose. (Emphasis added.)

Liquor Department Director Howard Adams confirmed that philosophy for Representative Nichols as follows:

> Mr. Chairman and Mr. Nichols, ... our primary responsibility is the regulation of the sale and the distribution of spirituous liquors. We have only as an aside been given the authority to regulate the erotic nature of entertainment and that's because of First Amendment problems and *so I don't have any problem saying that if a municipality wants to go beyond that in that area they can do it.* (Emphasis added.)

The City of Scottsdale's Director of Government Relations, Patrick Dodds, asked that the House of Representatives clarify its intent that cities can exceed the requirements imposed by the liquor director:

> [Scottsdale's sexually oriented business ordinance] has been challenged in court and one of the challenges is the preemption challenge. [Babe's Cabaret and Diamond Girls] are arguing that the city has been effectively preempted by the state because the state has seen fit to give the liquor department some measure of control in this area. We are just arguing that

lants argue that the legislature's enactment of A.R.S. section 4–112(H) indicates an intent to preempt local regulation generally and to allow only the limited exceptions set forth in that statute. We disagree. The statutory scheme regulating the intoxicating liquor trade has been in existence for years, and whether it preempts local control in any area is a matter of statutory construction, a task for the courts. *See State v. Prentiss*, 163 Ariz. 81, 85, 786 P.2d 932, 936 (1989) (the legislature usurps the function of the courts when it purports to declare the meaning of existing law).

¶ 15 Here, the language of A.R.S. section 4–112(H) allows the city, in regulating erotic displays, to be more restrictive than the state but not to be less restrictive. The court has recognized that meaning twice in another context. In *State v. Christi*, 149 Ariz. 323, 324, 718 P.2d 487, 488 (App.1986), dealing with a state statute allowing cities to regulate prostitution in a manner "at least as" stringent as the state, this court emphasized that that statute allows cities to "impose restrictions upon prostitution *greater than* those otherwise applicable under Arizona law." (Emphasis added.) In *State v. Crisp*, 175 Ariz. 281, 855 P.2d 795 (App.1993), this Court again recognized that the plain meaning of "at least as stringent" permits cities to punish prostitution *more severely* than does the state.

¶ 16 Our conclusion that there is no state preemption of local regulation over erotic entertainment at licensed liquor establishments answers most of the appellants' other arguments. It negates the contention that portions of the Ordinance exceed the limited scope of the authority that section 4–112(H) cedes to municipalities. Because the legislature did not intend to preempt local control, no specific statutory authorization was necessary.

¶ 17 This conclusion in the preceding paragraph also answers the appellants' argument that the statutory authorization to enact local

ordinances "at least as restrictive as rules adopted by the director" does not allow localities to pass and enforce ordinances that are more restrictive. Again, because there was no preemption to begin with, municipal corporations did not need section 4–112(H) to enter this arena but could regulate such behavior without legislative authority.

¶ 18 Finally, the appellants contend that two provisions of the Ordinance conflict with a specific statute on premise alterations and are therefore invalid. The appellants attack sections 16–247(d) and (g). The former requires that adult services occur on a stage elevated at least eighteen inches above the floor, separated from patrons by three feet with a barrier at least three feet high. The latter prohibits adult services in any location not in the direct line of sight of a manager's station, which itself must be in an area accessible to patrons. Appellants read these two subsections as requiring them to make significant alterations to the physical layout of their premises, leading them to argue that these sections conflict with the following statute:

No licensee shall alter or change the physical arrangement of his licensed premises so as to encompass greater space or the use of different or additional entrances, openings or accommodations than the space, entrance or entrances, openings or accommodations offered to the public at the time of issuance of the licensee's license or a prior written approval of the licensed premises, without first having filed with the director floor plans and diagrams completely disclosing and designating the proposed physical alterations of the licensed premises and shall have secured the written approval by the director. This provision shall apply to any person to person transfer of the licensed premises.

A.R.S. § 4–207.01(B). They argue that the director might disapprove any plans they submit to alter their premises to conform to the Ordinance. This dilemma, they argue,

we don't think that's the case. We think existing law would bear that out, but *we would just like to clarify your intent and make certain that the law says that cities can indeed exceed the requirements imposed by the liquor director.*

(Emphasis added.) *Pertaining to Provision Expressly Permitting Arizona Cities to Regulate Sexually Oriented Businesses: Hearing on S.B. 1397 before the Arizona H.R. Comm. on Econ. Dev., Int'l Trade and Tourism (3/22/94).*

makes the Ordinance inconsistent with the statute, so that the former is preempted.

¶ 19 In order to be preempted, the local ordinance must be truly inconsistent with the state statute; if the two are capable of "peaceful coexistence," no preemption exists. *See City of Prescott v. Town of Chino Valley,* 163 Ariz. at 616, 790 P.2d at 271. "Mere commonality of some aspect of subject matter is insufficient...." *Id.* Sections 16–247(d) and (g) of the Ordinance can peacefully coexist with A.R.S. section 4–207.01(B). The statute does not bar licensees from altering the physical layout of their premises; it simply requires them to obtain the director's approval before undertaking alteration. The appellants have not demonstrated that they cannot comply with both the Ordinance's requirements for a separate stage and line-of-sight manager's stations. They argue instead that it is possible the director might disapprove of proposed changes, a purely speculative prospect that does not render the Ordinance inconsistent with the statute.

### Conclusion

¶ 20 The comprehensive statewide scheme for control of intoxicating liquors does not reveal any preemptive legislative intent to regulate erotic entertainment, statewide, at establishments licensed to serve liquor. Cities are free to enact their own ordinances on the subject. The judgment is accordingly affirmed.

CONCURRING: NOEL FIDEL, Judge, and SARAH D. GRANT, Judge.