5 P.2d 934

**CITY OF TUCSON, a municipal corporation, Plaintiff/Appellant/Cross–Appellee,**

and

**Joana Diamos, Intervenor/Appellant/Cross–Appellee,**

v.

**CONSUMERS FOR RETAIL CHOICE SPONSORED BY WAL–MART, Defendant/Appellee/Cross–Appellant.**

**Consumers for Retail Choice Sponsored by Wal–Mart, a political committee registered with the Tucson City Clerk, and Hal Personius, a citizen and qualified elector of the City of Tucson, Plaintiffs/Appellees/Cross–Appellants,**

v.

**Kathleen Detrick, as the Clerk of the City of Tucson, and the City of Tucson, a municipal corporation, Defendants/Appellants/Cross–Appellees,**

and

**Joana Diamos, Intervenor/Appellant/Cross-Appellee.**

No. 2 CA–CV 00–0035.

Court of Appeals of Arizona, Division 2, Department B.

May 25, 2000.

Review Denied Sept. 26, 2000.

Meyers, Taber & Meyers, P.C. By Lisa T. Hauser and Gust Rosenfeld, P.L.C. By Richard A. Segal, Phoenix, Attorneys for Appellees/Cross–Appellants.

Gabroy, Rollman & Bossé, P.C. By Richard M. Rollman and Richard A. Brown, Tuscon, Attorneys for Appellants/Cross–Appellees City of Tucson and Detrick.

Raven & Kirschner, P.C. By Anne C. Graham–Bergin, Tucson, Attorneys for Intervenor/Appellant/Cross-Appellee.

**OPINION**

HOWARD, Judge.

¶ 1 The City of Tucson, a charter city, filed a declaratory judgment action[1] to clarify the validity and constitutionality of its referendum ordinances, which impose requirements on the content and circulation of Tucson referendum petitions in addition to those imposed by our state referendum statutes. Hal Personius and Consumers For Retail Choice Sponsored by Wal–Mart (collectively CFRC) filed a special action against Kathleen Detrick and the City of Tucson, seeking mandamus relief requiring Tucson to accept and process CFRC's referendum petition and seeking a declaration that the state referen-

---

1. Although the trial court ultimately dismissed Tucson's declaratory judgment action, we discern no basis for doing so. *See* A.R.S. § 12–1831.

dum statutes preempt Tucson's referendum ordinances. The trial court consolidated the two cases and granted summary judgment to CFRC, concluding that Tucson's referendum ordinances, with which CFRC did not comply, are preempted by the referendum statutes, and that CFRC's petition was qualified to appear on the ballot. Tucson appealed from this decision.[2] We reverse because Tucson's referendum ordinances do not conflict with, and are not preempted by, the referendum statutes, and CFRC did not comply with them.

## BACKGROUND

¶ 2 In 1985, the mayor and council of the City of Tucson adopted a comprehensive ordinance regarding the preparation, circulation, and presentation of initiative and referendum petitions. In response to fraud involving an initiative petition, the mayor and council later adopted a second ordinance for initiative and referendum petitions, adding requirements for the circulation of petitions.

¶ 3 In 1999, the mayor and council adopted a "Big Box" ordinance which imposed certain restrictions on retail establishments with over 100,000 square feet of floor area. CFRC applied for a referendum petition to have the Big Box ordinance placed on the next election's ballot. Detrick gave CFRC a copy of Tucson's Initiative and Referendum Rules and Regulations, which contained relevant portions of the City's Charter and Code and a sample petition purportedly complying with the Arizona Constitution and referendum statutes and Tucson's referendum ordinances. CFRC, however, patterned its referendum petition on its interpretation of the Constitution and statutes and did not seek to comply with the requirements of Tucson's ordinances. This dispute arose after CFRC submitted its petition to Tucson's City Clerk.

2. In addition, Tucson appealed from the trial court's order granting summary judgment on CFRC's request for a writ of mandamus and dismissing Tucson's declaratory judgment action, and Intervenor Diamos appealed from the trial court's order granting summary judgment to CFRC on Diamos's claim that CFRC's referendum petition failed to comply with the applicable

## DISCUSSION

¶ 4 In support of the trial court's ruling that Tucson's referendum ordinances were preempted by state law, CFRC contends that Tucson's ordinances impermissibly conflict with the state statutes, A.R.S. §§ 19–101 through 19–143, which set forth the procedures for referendum elections. Alternatively, CFRC asserts that the legislature "assumed control" of local referendum procedures in 1991, thereby appropriating the field. Tucson, however, claims that its ordinances supplement, rather than conflict with, the statutes and that the referendum ordinances concern solely local matters, over which the state has no control. Neither party presents any factual dispute, and we review this legal issue de novo. *Herman v. City of Tucson*, 311 Ariz. Adv. Rep. 12, ¶ 5, 197 Ariz. 430, 4 P.3d 973 (App.1999).

¶ 5 The right of statewide referendum is reserved in the Arizona Constitution to the people and the Legislature. Ariz. Const. art. IV, pt. 1, § 1(3). On matters involving incorporated cities, the power of referendum is reserved to the qualified electors of the city. Ariz. Const. art. IV, pt. 1, § 1(8). The Constitution grants cities the power to "prescribe the manner of exercising [that right] within the restrictions of general laws." *Id.*

¶ 6 In matters of solely local concern, a charter city's ordinance supersedes a conflicting state statute. *Strode v. Sullivan*, 72 Ariz. 360, 365, 236 P.2d 48, 51 (1951). However, in matters of both local and statewide concern, a charter city's ordinance is invalid if it conflicts with a valid state statute. Ariz. Const. art. IV, pt. 1, § 1(8); *Strode*, 72 Ariz. at 363, 236 P.2d at 50; *Mayor and Common Council of City of Prescott v. Randall*, 67 Ariz. 369, 372, 196 P.2d 477, 479 (1948); *City of Tucson v. State*, 191 Ariz. 436, 438, 957 P.2d 341, 343 (1997). *See also*

provisions of this state's constitution and referendum statutes. And CFRC cross-appealed from the trial court's ruling regarding the method of calculating the required number of referendum signatures under the state statutes. We need not address these issues in light of our resolution of the preemption issue.

A.R.S. § 9–284(B). But there must be an actual conflict. "Mere commonality of some aspect of subject matter is insufficient," and the ordinance and the statute must not be "capable of peaceful coexistence." *City of Prescott v. Town of Chino Valley*, 163 Ariz. 608, 616, 790 P.2d 263, 271 (1989), *vacated in part on other grounds*, 166 Ariz. 480, 803 P.2d 891 (1990); *see also Jett v. City of Tucson*, 180 Ariz. 115, 121–22, 882 P.2d 426, 432–33 (1994). And, although a city ordinance on a matter of local and statewide concern must not conflict with a statute, it may be more restrictive than the statute, *City of Phoenix v. Breuninger*, 50 Ariz. 372, 378, 72 P.2d 580, 583 (1937), " 'may parallel it, or even go beyond it.' " *Randall*, 67 Ariz. at 372, 196 P.2d at 479, *quoting Hislop v. Rodgers*, 54 Ariz. 101, 115, 92 P.2d 527, 533 (1939). *See also Union Transportes de Nogales v. City of Nogales*, 195 Ariz. 166, ¶ 23, 985 P.2d 1025, ¶ 23 (1999).

■ ¶ 7 Even if a city ordinance on a matter of local and statewide concern does not conflict with a state statute, however, it may nevertheless be invalid if the state has appropriated the field. *Flagstaff Vending Co. v. City of Flagstaff*, 118 Ariz. 556, 559, 578 P.2d 985, 988 (1978); *Babe's Cabaret v. City of Scottsdale*, 197 Ariz. 98, ¶ 11, 3 P.3d 1018, ¶ 11 (App.1999); *City of Tucson v. Rineer*, 193 Ariz. 160, ¶ 3, 971 P.2d 207, ¶ 3 (1998). "State preemption of local legislation raises a question of legislative intent, which can be either express or implied." *Babe's Cabaret*, 197 Ariz. 98, ¶ 11, 3 P.3d 1018, ¶ 11. The legislative intent to preempt must be clear; a negative inference is insufficient. *Town of Chino Valley*, 163 Ariz. at 616, 790 P.2d at 271; *Rineer*, 193 Ariz. 160, ¶ 4, 971 P.2d 207, ¶ 4; *see also Jett*, 180 Ariz. at 121–22, 882 P.2d at 432–33; *Babe's Cabaret*, 197 Ariz. 98, ¶ 11, 3 P.3d 1018, ¶ 11.

### A. Local/statewide concern

■ ¶ 8 Charter city elections are clearly a matter of local concern. *See Triano v. Massion*, 109 Ariz. 506, 508, 513 P.2d 935, 937 (1973); *Strode*, 72 Ariz. at 367–68, 236 P.2d at 53–54. They can, however, also involve matters of significant statewide importance. *See City of Tucson v. State*. Although the legislature did not identify any statewide interest in the referendum statutes, CFRC has posited that ensuring uniformity and avoiding confusion for citizens who want to circulate municipal and statewide referendum petitions are matters of statewide concern. We assume, without deciding, that city referendum procedures are also a matter of statewide concern.

### B. Conflict

■ ¶ 9 Section 19–141(A), A.R.S., provides that "[t]he provisions of this chapter shall apply to the legislation of cities, towns and counties, except as specifically provided to the contrary in this article...." (Footnote omitted.) Among other things, the chapter—A.R.S. §§ 19–101 through 19–143—provides the form for referendum petitions; outlines the general procedures for signing, filing, and verifying the petitions; prohibits certain acts; and provides a framework for referendum elections. Tucson's referendum ordinances have additional requirements, including, providing: (1) the names and addresses of three people who should be notified of all proceedings related to the petition; (2) a statement in the petition that the mayor and council may repeal the legislation or call a general or special election; and (3) avowals by the circulator that he or she retained direct custody and control of each signature sheet and personally witnessed each signature, that a copy of the title and text of the proposed referendum measure was attached to each signature sheet when circulated, and that the circulator crossed out and initialed all blank signature lines. *See* Tucson City Code §§ 12–52, 12–54, 12–76, and 12–77.

¶ 10 Tucson's additional referendum requirements are more restrictive than those of the state, adding more content to the petition and additional requirements for circulators. *See Union Transportes de Nogales*, 195 Ariz. 166, ¶ 23, 985 P.2d 1025, ¶ 23; *Randall*, 67 Ariz. at 372, 196 P.2d at 479; *Breuninger*, 50 Ariz. at 378, 72 P.2d at 583. But they do not conflict with or attempt to overrule any state requirements and are able to peacefully coexist with the state requirements. *See Town of*

*Chino Valley,* 163 Ariz. at 616, 790 P.2d at 271. Furthermore, although they may be slightly more burdensome than the state requirements, CFRC has produced no evidence that compliance with Tucson's referendum procedures would prevent or hinder a citizen from circulating a petition or would unduly burden the right of referendum. The additional content, in general, clarifies state law or imposes minimal anti-fraud protections. Tucson's additional requirements, therefore, do not violate the constitutional requirement that city referendum ordinances exist "within the restrictions of general laws," Ariz. Const. art. IV, pt. 1, § 1(8), or the requirement in § 19–141(A) that the statewide referendum procedures apply in city referendum elections.

## C. Preemption

¶ 11 CFRC also contends Tucson cannot enact any ordinance relating to referenda, except in narrow, statutorily-defined areas, because the legislature has preempted the field of local referendum procedures. First, CFRC relies on the language in § 19–141(A), that the provisions in that chapter apply to cities. That language, however, is insufficient to demonstrate a clear legislative intent to prevent the cities from enacting additional requirements about the form and manner of circulating referendum petitions. *See Town of Chino Valley,* 163 Ariz. at 616, 790 P.2d at 271. When interpreted in the context of the constitutional grant of power to cities to control the manner of their own referendum elections, within the restrictions of the general laws, *see* Ariz. Const. art. IV, pt. 1, § 1(8), the language in § 19–141(A) amounts to no more than a negative inference that the legislature intended to preclude city involvement, which is inadequate. *See Rineer,* 193 Ariz. 160, ¶ 4, 971 P.2d 207, ¶ 4.

¶ 12 *Second,* CFRC relies on the 1991 amendments to § 19–141 as evidence of legislative intent to preclude any city involvement other than in statutorily-defined areas. Before the 1991 amendments, § 19–141(A) provided that "[t]he provisions of this chapter shall apply to the legislation of cities and towns, except that cities and towns may pro-

vide for requirements in lieu of the requirements of this article which are less restrictive on the right to initiative and referendum. . . ." The 1991 amendment replaced that language with the present language: "The provisions of this chapter shall apply to the legislation of cities, towns and counties, except as specifically provided to the contrary in this article. . . ." (Footnote omitted.)

¶ 13 The change in language in § 19–141(A) falls short of demonstrating a clear legislative intent to exclusively control city referendum procedures. It may indicate that the legislature intended to invalidate less restrictive ordinances. But the legislature did not include language clearly invalidating existing ordinances that were more restrictive or prohibiting cities from enacting any ordinances regarding referendum petitions,[3] despite presumably being aware of existing case law which held that, in matters of local and statewide concern, cities can enact ordinances more restrictive than the statutes. *Randall,* 67 Ariz. at 372, 196 P.2d at 479; *see Daou v. Harris,* 139 Ariz. 353, 357, 678 P.2d 934, 938 (1984) (legislature presumed to know of existing law). And the legislature did not materially change the language in § 19–141(C) which, both before and after the 1991 amendments, provided in relevant part that city referendum procedures "shall be as nearly as practicable the same" as the referendum procedures "provided for the state at large." If the legislature had intended to prohibit the enactment of any city ordinance relating to referenda, retaining this language would have been superfluous because city procedures would always be identical to statewide procedures, except as specifically modified by statute.

¶ 14 Finally, we reject CFRC's argument that comments made during legislative sessions prior to the amendment of § 19–141 evince the legislature's clear intent to preempt the field. CFRC relies on one senator's comment about the Initiative and Referendum Subcommittee's "attempt[ ] to alleviate inconsistencies that exist from one community to another," and the Arizona At-

---

**3.** We do not imply or decide that such a statute would necessarily be constitutional.

torney General's proposed recommendation that § 19–141 be amended "to clarify how the foregoing requirements and duties apply to cities ... to provide for consistency and uniformity." These general comments are not necessarily indicative of the full legislature's intent. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 269–70, 872 P.2d 668, 673–74 (1994) (little or no weight given to nonlegislator's comments made in committee hearings unless there are guarantees that statements reflect legislators' views); *City of Tucson v. Woods*, 191 Ariz. 523, 528, 959 P.2d 394, 399 (1997) ("[A] single member of the legislature is not able to testify regarding the intent of the legislature in passing a law."). Moreover, although these comments show some desire for a minimum level of consistency, they do not clearly state that the legislature intended to prohibit any city ordinances on referendum elections and create lock-step uniformity without any additional local restrictions. They do not, therefore, demonstrate a clear legislative intent to preempt the field of city referendum procedures.

**D. Conclusion**

¶ 15 Adopting CFRC's interpretation of the statutes would invalidate existing ordinances and prohibit cities from undertaking the most minor tailoring of referendum procedures to meet their own particular needs. Guided by the constitutional grant of power to the cities of some control over their own referendum procedures, we do not find sufficient evidence of a clear legislative intent to preempt local legislation concerning the manner and procedure for city referendum elections. *See Rineer.* Therefore, cities may enact ordinances regulating the procedure for their referendum petitions, so long as those ordinances do not directly conflict with the referendum statutes and do not unduly impair the constitutional right of referendum. Although CFRC contends that permitting

Tucson to impose additional requirements for referendum petitions will open the door to challenges of those petitions on the ground that they do not comply with the statutes, our holding only allows Tucson to impose additional requirements that are consistent with the statutes. At worst, Tucson's additional requirements add mere surplusage to the petitions, which is insufficient to invalidate them. *See Pioneer Trust Co. of Arizona v. Pima County*, 168 Ariz. 61, 67, 811 P.2d 22, 28 (1991) ("Absent constitutional or statutory proscription of such surplusage, we choose not to silence the voice of the people because of it."). At best, they accomplish Tucson's avowed purpose of protecting the integrity of the constitutional right of referendum.

¶ 16 Tucson's referendum ordinances, in most relevant respects,[4] are more restrictive than the state statutes and can peacefully coexist with them. They are, therefore, valid. And because CFRC admittedly did not fully comply with Tucson's referendum ordinances, its petition is insufficient to require an election. *Western Devcor, Inc. v. City of Scottsdale*, 168 Ariz. 426, 432, 814 P.2d 767, 773 (1991).

**DISPOSITION**

¶ 17 The grant of summary judgment to CFRC is reversed. All requests for attorney's fees on appeal are denied.

CONCURRING: PHILIP G. ESPINOSA, Chief Judge, and J. WILLIAM BRAMMER, JR., Presiding Judge.

---

4. At oral argument, CFRC pointed out minor additions or variations in Tucson's ordinances, in an attempt to show "conflict" between the statutes and the ordinances. The most significant "conflict," however, was that the statutes require the serial number on each page of the referendum petition, while Tucson requires either the ordinance number or the official serial number.

We see no conflict in allowing the unique number of the ordinance which is subject to the referendum to substitute for the serial number. Other than this, CFRC has not challenged on appeal each provision of the referendum ordinances, item by item, and we do not make any determinations regarding other specific provisions.