895 P.2d 1018

**STATE of Arizona, Appellee,**

v.

**David E. MOERMAN and James A. Diaz, Appellants.**

**David E. MOERMAN and James A. Diaz, Petitioners,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Norman D. Hall, judge thereof, and the Phoenix Municipal Court, the Honorable Richard M. Smith, judge thereof, Respondent Judges,**

**Kerry G. Wangberg, Phoenix City Prosecutor, Real Party in Interest.**

**1 CA–CR 93–0674, 1 CA–SA 93–0276.**

Court of Appeals of Arizona, Division 1, Department C.

Dec. 13, 1994.

Review Denied May 23, 1995.

Roderick G. McDougall, Phoenix City Atty. by Gregory L. Hanchett, Asst. City Prosecutor, Phoenix, for appellee/real party in interest.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Phoenix, for appellee.

Richard D. Coffinger, Glendale, for appellants/petitioners. .

### OPINION

VOSS, Judge.

Upon stipulated facts, Defendants David E. Moerman and James A. Diaz were tried and convicted in Phoenix Municipal Court of misconduct involving weapons, a class one misdemeanor, in violation of Arizona Revised Statutes Annotated ("A.R.S.") section 13–3102(A)(1) (Supp.1992). Each defendant was fined $100.00. Defendants' cases were consolidated and their convictions and sentences were affirmed on appeal to the superior court.

Defendants present two arguments in this consolidated appeal and special action: (1) That A.R.S. section 13–3102 conflicts unconstitutionally with Article II, section 26 of the Arizona Constitution; and (2) that the municipal and superior courts erred in their appli-

cation of this statute. We affirm and deny relief.

### FACTS AND PROCEDURAL HISTORY

Defendants Moerman and Diaz were pulled over for routine traffic stops in Phoenix during the autumn of 1992. Even though the stops occurred at different times and locations, the following facts are common to both cases. When the police officers approached Defendants' vehicles, they observed that Defendants were wearing "fanny packs" around their waists. The officers did not know that the "fanny packs" were designed specially to carry concealed weapons, nor that they actually contained guns. In fact, the officers learned that Defendants were carrying guns inside their packs only after Defendants told them. Defendants then were charged with misconduct involving weapons in violation of A.R.S. section 13–3102(A)(1). The cases were consolidated and tried in Phoenix Municipal Court on a stipulated record. The court found Defendants guilty as charged. On appeal to the superior court, the convictions and sentences were affirmed.

■ Defendants timely appealed to this court pursuant to A.R.S. section 22–375 (1990). We have jurisdiction to review the facial constitutional validity of A.R.S. section 13–3102. *State v. Martin*, 174 Ariz. 118, 121, 847 P.2d 619, 622 (App.1992). Defendants also filed a petition for special action challenging the application of this statute. Because the issue raised in the special action is an issue of first impression and a matter of statewide importance that is likely to recur and, in fact, has recurred in subsequent cases, we accept jurisdiction. *State ex rel. Bowers v. Superior Court*, 173 Ariz. 34, 38, 839 P.2d 454, 458 (App.1992). We have consolidated the direct appeal with the special action, and resolve both with this opinion.

### DISCUSSION

*A. Constitutionality*

■ Defendants argue that A.R.S. section 13–3102 is unconstitutional[1] because it

---

1. A statute is presumed to be constitutional and      the party attacking its validity bears the burden

conflicts with the right to bear arms as guaranteed by Article II, section 26 of the Arizona Constitution. We disagree.

A.R.S. section 13-3102 provides in pertinent part:

A. A person commits misconduct involving weapons by knowingly:

1. Carrying a deadly weapon ... on his person; or

2. Carrying a deadly weapon concealed within immediate control of any person in or on a means of transportation;

. . . .

F. Subsection A, paragraph 1 of this section shall not apply to a weapon or weapons carried in a belt holster which holster is wholly or partially visible, or carried in a scabbard or case designed for carrying weapons which scabbard or case is wholly or partially visible or carried in luggage. Subsection A, paragraph 2 of this section shall not apply to a weapon or weapons carried in a case, holster, scabbard, pack or luggage which are carried within a means of transportation or within a storage compartment, trunk or glove compartment of a means of transportation.

■ As the sole basis for their argument, Defendants cite the fact that the delegates at the Arizona Constitutional Convention of 1910 rejected five separate amendments that expressly would have granted the legislature the power to regulate or prohibit the carrying of concealed weapons. Defendants con-

cede that the constitutionality of A.R.S. section 13-3102 was addressed and upheld by this court in *Dano v. Collins*, 166 Ariz. 322, 802 P.2d 1021 (App.1990), *review denied*, 167 Ariz. 535, 809 P.2d 960 (1991). They contend, nevertheless, that *Dano* is not dispositive because it failed to analyze the "irrefutable" intent of the framers of the Arizona Constitution to create an absolute right to bear arms.

Of the five "rejected amendments" cited by Defendants, three offer no indicia of the framers' intent regarding the right to bear arms.[2] Therefore, we examine only the remaining two. While the delegates at the Constitutional Convention were considering Arizona's Bill of Rights[3] during the evening proceedings of November 25, 1910, the first "rejected amendment" was introduced. This amendment proposed to add to Arizona's right to bear arms the following clause: "But the legislature shall have the right to regulate the wearing of weapons to prevent crime." *The Records of the Arizona Constitutional Convention of 1910* 678 (John S. Goff ed., 1991). The delegates rejected this by a roll call vote of 23-22. *Id.* at 679. The second "rejected amendment" proposed to delete the entire provision and rephrase it as follows: "The people shall have the right to bear arms for their safety and defense, but the legislature shall regulate the exercise of this right by law." *Id.* at 678. This amendment was defeated by voice vote. *Id.* The delegates ultimately approved Arizona's Bill

of establishing that it infringes upon a constitutional guarantee or violates a constitutional provision. *New Times, Inc. v. Arizona Board of Regents*, 110 Ariz. 367, 370, 519 P.2d 169, 172 (1974); *Dano v. Collins*, 166 Ariz. 322, 323, 802 P.2d 1021, 1022 (App.1990), *review denied*, 167 Ariz. 535, 809 P.2d 960 (1991). Moreover, the legislature's power to enact laws it deems appropriate is limited only by an express or inferential prohibition within the state or federal constitutions. *See Whitney v. Bolin*, 85 Ariz. 44, 47, 330 P.2d 1003, 1004 (1958); *see also Roberts v. Spray*, 71 Ariz. 60, 69, 223 P.2d 808, 814 (1950).

2. The three "rejected amendments" were provisions contained within Propositions that the Convention was scheduled to consider on or after November 26, 1910. *The Records of the Arizona Constitutional Convention of 1910* 684 (John S. Goff ed., 1991). Each of these Propositions was

a competing comprehensive proposal for Arizona's Bill of Rights. *Id.* at 1247-48, 1250-56, 1293-1300. Early in the morning proceedings of November 26, 1910, the day after the delegates approved the Bill of Rights, each of these Propositions was tabled indefinitely without discussion. *Id.* at 684. Because the proposed amendments relied on by Defendants were not even discussed, they provide no support for Defendants' position.

3. The proposed provision that the delegates considered and ultimately passed that evening became Article II, section 26 of the Arizona Constitution. This section, which has not been amended, provides: "The right of the individual citizen to bear arms in defense of himself or the State shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain, or employ an armed body of men."

of Rights and then concluded the November 25, 1910, evening proceedings. *Id.* at 682.

We do not believe these "rejected amendments" support Defendants' argument that the framers of the Arizona Constitution intended Article II, section 26 to confer an absolute right to bear arms. Defendants assert that because the second "rejected amendment" expressly would have authorized the legislature to regulate the right to bear arms, we should infer from its rejection that the delegates intended to make this right absolute. We disagree for two reasons. First, this amendment would have expanded the scope of an individual's right to bear arms. Instead of allowing a person to bear arms for defense only, the second "rejected amendment" would have allowed a person to bear arms for "*safety* and defense." *Id.* at 678 (emphasis added). Second, this amendment would have entirely eliminated the second clause of the proposed right to bear arms. This clause provides: "but nothing in this section shall be construed as authorizing individuals or corporations to organize, maintain, or employ an armed body of men." Arizona Constitution, Article II, § 26. The framers could have rejected this amendment because this clause was deleted. For both of these reasons, the second "rejected amendment" provides little, if any, support for Defendants' position. Likewise, when balanced against the clear evidence to the contrary, the remaining "rejected amendment" offers little evidence that the framers intended to make Arizona's right to bear arms absolute.

First, we note that Article II, section 26 itself provides not an absolute right, but instead a qualified one in which "[t]he right of the individual citizen to bear arms *in defense of himself or the State* shall not be impaired...." (Emphasis added.) Its plain wording demonstrates that the right is not absolute and implies that some qualification is permissible. *Dano,* 166 Ariz. at 325, 802 P.2d at 1024. Indeed, its very language suggests that people do not have the right to bear arms in any manner and under all circumstances in Arizona. *Id.* at 323, 802 P.2d at 1022. Second, Defendants' denial that the delegates at Arizona's Constitutional Convention could have understood the right to bear

arms as a qualified right ignores the state of the law at that time. Immediately *before and after* the adoption of Arizona's Constitution, carrying concealed weapons was prohibited. In fact, the 1913 Arizona Penal Code mirrored the 1901 Penal Code of the Arizona Territory, providing "[i]t shall be unlawful for any person (except a peace officer in actual service and discharge of his duty), to have or carry concealed on or about his person, any pistol or other firearm...." Arizona Revised Statutes, Penal Code, Title XII, § 426 (1913); Revised Statutes of Arizona Territory, Penal Code, Title XI, § 382 (1901). Defendants fail to reconcile these statutes with the first "rejected amendment." Indeed, they do not consider that the framers could have rejected this amendment to avoid redundancy, or because they deemed it to be unnecessary. Not only is the historical context of the first "rejected amendment" open to several interpretations, but the interpretation argued by Defendants is not the most persuasive.

■ Because the only evidence that even suggests that the framers intended to make Arizona's right to bear arms absolute is the first "rejected amendment," Defendants have not met their burden of demonstrating that Article II, section 26 of the Arizona Constitution expressly or inferentially prohibits the legislature from limiting the right to carry concealed weapons. Additionally, we have already noted that A.R.S. section 13–3102 was drafted to "protect[ ] the public by preventing an individual from having on hand a deadly weapon of which the public is unaware, and which an individual may use in a sudden heat of passion." *Dano,* 166 Ariz. at 324, 802 P.2d at 1023. This statute is narrowly drawn and, as the discussion below indicates, it regulates only the manner in which individuals may exercise their right to bear arms. Although A.R.S. section 13–3102 may limit this right, it neither frustrates nor impairs it. A.R.S. section 13–3102 is constitutional.

## B. Application and Interpretation

Defendants argue that the municipal and superior courts erred when applying A.R.S. section 13–3102. They petition this court to

vacate their convictions and fines. We disagree with Defendants' argument and deny relief.

In construing a statute, our primary purpose is to "determine and give effect to the legislative intent behind the statute." *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). There also is a presumption that the legislature does not include in statutes provisions which are redundant, void, inert, trivial, superfluous, or contradictory. *See State v. Deddens*, 112 Ariz. 425, 429, 542 P.2d 1124, 1128 (1975); *see also State v. Edwards*, 103 Ariz. 487, 489, 446 P.2d 1, 3 (1968). We must examine the statute *as a whole* and give harmonious effect to *all* its sections. *State v. Ball*, 157 Ariz. 382, 384, 758 P.2d 653, 655 (App.1988) (emphasis added).

As a threshold matter, we note that Defendants were charged under A.R.S. section 13–3102(A)(1), not A.R.S. section 13–3102(A)(2). Subsection A, paragraph 1 establishes a broad prohibition against carrying concealed weapons on one's person. Subsection A, paragraph 2 prohibits carrying concealed weapons not on one's person, but instead "within immediate control of any person in or on a means of transportation." Here, Defendants were carrying concealed weapons inside "fanny packs." Because the packs were on their persons, A.R.S. section 13–3102(A)(1) applies. Therefore, in the absence of an exemption for Defendants' conduct, we must uphold their convictions and fines.

A.R.S. section 13–3102(F) provides exemptions to the application of A.R.S. section 13–3102(A)(1) and (2). Defendants argue that because a "fanny pack" is a "case designed for carrying weapons" pursuant to A.R.S. section 13–3102(F), the municipal and superior courts erred by convicting them. We disagree.

First, we examine the plain language of A.R.S. section 13–3102(F). By accepting Defendants' argument that a "fanny pack" is a "case" we would disregard the legislative intent underlying the second sentence of this subsection. When read in its entirety, the terms of subsection F identify a legislative scheme with an implicit definition of "case." The first sentence provides a narrow exemption in which one can carry a concealed weapon on one's person in a holster, scabbard, or case that is visible. A.R.S. § 13–3102(F).[4] The second sentence, on the other hand, creates a broader exemption for concealed weapons carried "within immediate control of any person in or on a means of transportation." *Id.* In the latter, one can carry a concealed weapon not only in a holster, scabbard, or case, but also in a *"pack."* *Id.* (emphasis added). Moreover, unlike the first sentence of subsection F, the second sentence does not require that the conveyance utilized to carry the weapon be visible. *Id.* Therefore, the very language used in A.R.S. section 13–3102(F) supports the conclusion that the legislature did not intend a "case" to include any conveyance that could be construed as a "pack." Concluding otherwise would obviate the rational distinction that the legislature created between the two sentences by adding "pack" and would render this term virtually meaningless. This we cannot do.

Moreover, by accepting Defendants' definition of a "case" we would allow the narrow exemption of subsection F to engulf the broad prohibition of subsection A. Defendants argue that the statute *encourages* people to carry concealed weapons on their persons, just as long as they do so in a conveyance that is both visible and designed to carry weapons. That a "case" is designed intentionally to appear as though it is a benign every-day item containing anything but a weapon is irrelevant to Defendants. Defendants argue that any specially designed conveyance—a "fanny pack," purse, back-

---

4. Both the first and the second sentences of A.R.S. section 13–3102(F) provide exemptions for concealed weapons carried in luggage. This additional exemption is not important for purposes of this discussion. "Luggage" is commonly defined as "suitcases or travelling bags for a traveller's belongings." *Webster's New Collegiate Dictionary* 678 (1981). A "fanny pack" is not such a means of conveyance. Moreover, when carried in luggage used while travelling, a concealed weapon for all intents and purposes is inaccessible for use in "a sudden heat of passion." *Dano*, 166 Ariz. at 324, 802 P.2d at 1023.

pack, lunch box or briefcase—is a "case" for purposes of A.R.S. section 13–3102(F). Because this construction effectively would eviscerate the broad and general prohibition of A.R.S. section 13–3102(A)(1), we disagree.

■■■■. The public policy underlying A.R.S. section 13–3102(F) also supports our construction. In *Dano,* this court noted:

[t]he right to bear arms in self-defense is not impaired by requiring individuals to carry weapons openly. Appellants are free to bear exposed weapons for their defense. Furthermore, the statute has a reasonable purpose—it protects the public by preventing an individual from having on hand a deadly weapon of which the public is unaware, and which an individual may use in a sudden heat of passion.

166 Ariz. at 323–24, 802 P.2d at 1022–23. *Dano* correctly concludes that notice is the key to understanding and harmonizing A.R.S. sections 13–3102(A)(1) and (F). We believe that the legislature intended to prohibit a person from carrying a concealed weapon on his or her person in a manner readily accessible for immediate use unless the conveyance utilized to carry the weapon reasonably would place others on notice that such person is armed.[5] "Fanny packs" do not give such notice. On one hand, conspicuously carrying a holster or scabbard gives notice to most people that one is armed. On the other hand, carrying a concealed weapon in a "fanny pack"—or for that matter in a purse, backpack, lunch box, briefcase, or other conveyance that is specially designed to carry a concealed weapon—does not.[6]

■■■ We add that we would effectuate curious public policy if we accepted Defendants' argument that a "fanny pack" was a "case" for purposes of A.R.S. section 13–3102(F). Defendants imply that when two people carry concealed weapons in conveyances that are indistinguishable in appearance and when both are subsequently charged under A.R.S. section 13–3102(A)(1), the person who has a case with an interior designed for carrying weapons will be acquitted while the other person who has an ordinary case could be convicted. Under this interpretation, the manufacturer's design and marketing would be dispositive of what constitutes a "case" and, therefore, who is subject to criminal liability under this statute. This conclusion does not trouble Defendants, despite the statutory public policy that Arizona's Criminal Code should "differentiate on *reasonable* grounds between serious and minor offenses and ... prescribe proportionate penalties for each...." A.R.S. § 13–101(4) (1989) (emphasis added). Although Defendants may consider this distinction to be reasonable, we do not.

## CONCLUSION

For foregoing reasons, we hold that A.R.S. section 13–3102 is constitutional and that a "fanny pack" is not a "case" for purposes of A.R.S. section 13–3102(F). We have examined the record for fundamental error and have found none. Accordingly, we deny relief and affirm the convictions and sentences of Defendants Moerman and Diaz.

EHRLICH, P.J., concurs.

WEISBERG, Judge, dissenting.

I respectfully dissent from the majority's determination that A.R.S. section 13–3102(F) applies to weapons carried in the fanny-packs at issue here. While I concede that the majority's interpretation likely reflects that intended by the legislature, such an interpretation renders the statute unconstitutionally vague.

---

**5.** While of no moment to the decision today, the court acknowledges that the legislature now allows licensed individuals to carry concealed weapons in any manner they choose. The legislation, however, does require training and screening of potential licensees. *See* A.R.S. § 13–3112 (Supp.1994).

**6.** Although pedestrians cannot observe readily what a car driver is carrying, the visibility and nature of a conveyance becomes essential to give notice of a concealed weapon to those who may approach the driver while the car is stopped. Indeed, the facts of this case illustrate this. Here, police officers did not have any notice that Defendants were carrying concealed guns on their persons inside "fanny packs." In fact, the officers only learned that Defendants had concealed weapons on their persons *after* Defendants told them.

A statute is unconstitutionally vague if it does not give a person of ordinary intelligence the ability to determine what the statute prohibits. *State v. Takacs,* 169 Ariz. 392, 394, 819 P.2d 978, 980 (App.1991). Although the majority has made a persuasive argument that the legislature did not intend to exempt weapons carried in these fanny-packs, the plain language of the statute reads otherwise. To interpret the statute contrary to its plain language would deprive these defendants of their right to due process of law.

> Due process requires that criminal offenses be defined in terms of sufficient definiteness to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute because a person should not be required, at the risk of his liberty, to speculate as to the meaning of a criminal statute.

*State v. Walton,* 133 Ariz. 282, 288, 650 P.2d 1264, 1270 (App.1982) (citation omitted).

After establishing a general prohibition of concealed weapons, A.R.S. section 13–3102 excludes from that prohibition weapons "carried in a scabbard or case designed for carrying weapons which scabbard or case is wholly or partially visible...." A.R.S. § 13–3102(F). The issue here is whether defendants' fanny-packs are "case[s] designed for carrying weapons." The common meaning of "case" is "a box or receptacle for holding something," or "an outer covering or housing." Webster's New Collegiate Dictionary 170 (1979). The fanny-packs in this matter clearly fit that definition.

The majority would interpret "a case designed for carrying weapons" to mean "a case designed for carrying weapons, which case must be readily identifiable as containing a weapon." Such interpretation does not give a person of ordinary intelligence fair notice of what the statute prohibits.

To avoid confusion, the legislature ought to require that the holster, scabbard, or case be readily identifiable as containing a weapon. As presently written, however, the plain language of the statute includes these fanny-packs within the statutory exception.

I conclude, therefore, that A.R.S. section 13–3102(F), as interpreted by the majority, is unconstitutionally vague and deprives defendants of due process of law. Accordingly, I would reverse the convictions.