86 P.3d 917

**CITY OF PHOENIX, Plaintiff–Appellee,**

v.

**PHOENIX EMPLOYMENT RELATIONS BOARD; American Federation of State, County and Municipal Employees, Local 2384; Tracie Lowe; and Patrick Brown, Defendants–Appellants.**

No. 1 CA–CV 02–0810.

Court of Appeals of Arizona, Division 1, Department E.

March 25, 2004.

---

William R. Brown, P.C. By William R. Brown, Phoenix, Attorneys for Defendant–Appellant Phoenix Employment Relations Board.

Martin & Bonnett, P.L.L.C. By Daniel L. Bonnett, Susan Martin, Jennifer L. Kroll, Phoenix, Attorneys for Defendants–Appellants American Federation of State, County and Municipal Employees AFL–CIO, Local 2384; Tracie Lowe and Patrick Brown, Real Parties–in–Interest.

## OPINION

IRVINE, Judge.

¶1 The Phoenix Employment Relations Board ("PERB"), American Federation of State, County and Municipal Employees, AFL–CIO, Local 2384 ("Union"), Tracie Lowe and Patrick Brown (collectively "appellants") appeal from the special action judgment of the superior court directing PERB to dismiss the appellants' unfair labor practice charges. We conclude that PERB, under the City of Phoenix's Meet and Confer Ordinance ("Ordinance"), had jurisdiction to consider appellants' unfair labor practice charges. Therefore, we reverse and remand to the trial court for entry of judgment in favor of appellants.

## FACTS AND PROCEDURAL HISTORY

¶2 As the result of two unrelated investigations by the City of Phoenix ("City"), Patrick Brown was suspended for two days without pay for an unexplained absence from work and Tracie Lowe was terminated from her employment for misuse of City property. Each sought review of the discipline with the Phoenix Civil Service Board.[1] Thereafter, Brown, Lowe and the Union filed unfair labor practice charges with PERB pursuant to applicable provisions of the Ordinance. *See* Phoenix City Code ("PCC") §§ 2–209 through –222.

¶3 Brown and Lowe based their unfair labor practice charges on allegations that their supervisors obtained information from an investigatory interview without first in-

Office of the City Attorney By Peter Van Haren, City Attorney, L. Michael Hamblin, Assistant City Attorney, Phoenix, Attorneys for Plaintiff–Appellee.

---

1. The Civil Service Board determined that Lowe's termination was too severe and reduced it to a suspension of two hundred and forty (240) hours.

forming them of their right to union representation. They asserted that the failure to inform them of their rights violated the 2000–2002 Memorandum of Understanding between the City and the Union and the Ordinance, specifically, PCC § 2–220.

¶4 The City moved to dismiss Brown's unfair labor practice charge contending that PERB had no jurisdiction when a timely appeal had been filed with the Civil Service Board. The Union and Brown responded that the Ordinance gave PERB exclusive jurisdiction to consider unfair labor practices.

¶5 The City similarly moved to dismiss Lowe's unfair labor practice charge alleging that pursuant to PCC § 2–211(H)(3), (9), and PERB Rule 1.4, PERB did not have jurisdiction to entertain allegations of unfair labor practices in cases in which appeals had been timely filed before the Civil Service Board. Additionally, the City argued that Lowe still had a remedy through the Memorandum of Understanding grievance-arbitration process.

¶6 PERB denied the City's motions to dismiss and exercised jurisdiction to determine the unfair labor practice charges filed by Brown, Lowe and the Union. PERB stated that its remedy would be limited to a Cease and Desist and a Posting Order if it found an unfair labor practice. PERB consolidated the cases and ordered them set for hearing. Before that hearing commenced the City filed its special action complaint in superior court.

¶7 After briefing and argument, the superior court entered judgment in favor of the City (1) vacating the August 31, 2001 order of PERB setting the unfair labor practice charges hearing and (2) directing PERB to dismiss the unfair labor practice charges. The superior court reasoned that PERB does not have jurisdiction to hear an unfair labor practice charge on the same case in which the Civil Service Board is hearing a disciplinary appeal.

## DISCUSSION

¶8 The central dispute in this appeal is the correct interpretation of the terms of the Ordinance defining the authority of PERB. These provisions include subsections (3), (6), (8) and (9) of section 2–211(H) of the Phoenix City Code, which state:

(H) Powers and duties of the Board.

\* \* \*

(3) The Board shall have the authority to adjudicate a charge for which no appeal has been taken to the City of Phoenix Civil Service Board.

\* \* \*

(6) Hold hearings, administer oaths, compel attendance of and examine witnesses, compel production of and examine documents, and provide for informal hearing procedures.

If the Board determines that a party has engaged, or is engaging, in conduct in violation of this ordinance, it may issue an order requiring the party to cease and desist from such conduct. If the violation involves the demotion, suspension or termination of an employee, the Board may order the reinstatement of such employee with or without back pay. The order may further require the party to make reports from time to time showing the extent to which the party has complied with the order.

\* \* \*

(8) The Board shall have exclusive authority to determine the existence of an unfair labor practice. The Board shall have the power to order reinstatement and/or back pay for demoted, suspended or terminated employees in cases which involve unfair labor practices. It may order the City to cease and desist any unfair labor practice; except for the authority to order the parties to bargain in good faith, it shall have no power to order affirmative action that would in any way diminish the Charter powers of the City Council, City Manager, Personnel Official, or the Phoenix Civil Service Board. The Board may, however, make an advisory recommendation to the appropriate authority.

(9) The Board shall have no jurisdiction over any cases involving discipline where

timely filed under the City's civil service system.

Subsection (K) adds:

The authority and jurisdiction granted under the Charter to the Phoenix Civil Service Board and to the Personnel Official shall not be diminished by the operation of this ordinance.

PCC § 2–211(K). PERB has also adopted Rules and Regulations, with the approval of the City Council, one of which addresses its authority.

1.4 Authority of the Board

The Board shall be responsible for the enforcement of the ordinance and these Rules and Regulations. The Board shall have exclusive authority to determine the existence of an unfair labor practice. Written claims of violation of Phoenix City Code, section 2–220, shall be adjudicated by the Board. The Board, however, shall have no jurisdiction over any cases involving discipline where timely filed under the City's Civil Service System.

PERB Rules and Regulations (2000).

■ ¶ 9 The underlying dispute between the parties is the scope of an employee's right to be informed that he or she has a right to have a union representative present during an investigatory interview. In *National Labor Relations Board v. J. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), the United States Supreme Court "upheld the National Labor Relations Board's conclusion that an employer's denial of an employee's request to have a union representative present at an investigatory interview, which the employee reasonably believed might result in disciplinary ac-

tion, was an unfair labor practice." *NASA v. Fed. Labor Relations Auth.,* 527 U.S. 229, 251, 119 S.Ct. 1979, 144 L.Ed.2d 258 (1999). In its brief, the City acknowledges that the right to union representation if requested by an employee, known as a *Weingarten* right, is conferred by the Ordinance because of the holding in *Weingarten.* Before PERB, the issue to be decided is the scope of *Weingarten* and the Memorandum of Understanding.[2] Here, the issue is whether PERB has the power to adjudicate alleged violations of *Weingarten* rights where an employee has sought a disciplinary hearing before the Civil Service Board.

■ ¶ 10 To resolve this dispute we must interpret the scope of PERB's authority under the Charter and applicable ordinances. Questions of an administrative agency's authority are issues of law that courts review de novo. *Simms v. Napolitano,* 205 Ariz. 500, 502, ¶ 9, 73 P.3d 631, 633 (App.2003). We review de novo the trial court's Findings of Fact, Conclusions of Law and Judgment in the Special Action. *Ayala v. Hill,* 136 Ariz. 88, 664 P.2d 238 (App.1983).

■ ¶ 11 A basic tenet of statutory construction requires the court to determine and give effect to legislative intent, and, when uncertain of legislative intent, the court must read the statute as a whole and give meaningful operation to each of its provisions. *See State v. Moerman,* 182 Ariz. 255, 260, 895 P.2d 1018, 1023 (App.1994); *Kaku v. Ariz. Bd. of Regents,* 172 Ariz. 296, 297, 836 P.2d 1006, 1007 (App.1992). Courts avoid interpreting a statute so as to render any of its language mere surplusage, and instead give meaning to each word, phrase, clause, and

---

2. The City argued before PERB, in part, that the right in dispute derives not from the Ordinance, but only from Article 5, Section 2 of the Memorandum of Understanding. That section states, in pertinent part:

Unit employees have the right to be represented by the Union in dealings with the City concerning grievances, and, if personally requested by the employee, during the conduct of a management initiated investigatory interview concerning allegations focused on the employee which may result in disciplinary action against the employee for violation of City or department work rules or regulations. **Prior to the employee being interviewed, a supervi-**

**sor will advise the employee of the right to a representative.** An interview becomes investigatory when facts and evidence sought by management may result in any disciplinary action against the employee being interviewed. [Emphasis in original].

The City alleges that the Union, relying on this provision and *Weingarten,* "has consistently requested that information obtained by the City in violation of either the MOU or the [Ordinance] should be suppressed by the CSB or excluded from evidence much the same as illegally obtained evidence is suppressed in a criminal proceeding as 'fruit of the poisonous tree.' "

sentence so that no part of the statute will be void, inert, redundant, or trivial. *See In re Estate of Zaritsky*, 198 Ariz. 599, 12 P.3d 1203 (App.2000); *Ariz. Dept. of Revenue v. Superior Court*, 189 Ariz. 49, 938 P.2d 98 (App.1997). "Because agencies are creatures of statute, the degree to which they can exercise any power depends upon the legislature's grant of authority to the agency." *Facilitec v. Hibbs*, 206 Ariz. 486, 488, ¶ 10, 80 P.3d 765, 767 (2003). We have previously recognized that "[j]ust as the federal courts uniformly defer to the expertise of the NLRB to make the initial determination of whether an employer's conduct demonstrates an unwillingness to bargain in good faith, ... similar deference must be given to PERB with respect to its findings." *City of Phoenix v. Phoenix Employment Relations Bd.*, 145 Ariz. 92, 95–96, 699 P.2d 1323, 1326–27 (App.1985).

¶ 12 The City Charter authorizes the Civil Service Board to "hear appeals from disciplinary demotions, discharges and suspensions by classified employees who have completed the prescribed probationary period." Phoenix City Charter, Chapter XXV, § 3(3). As a City Charter institution, the Civil Service Board's authority and powers are preeminent over any board, commission or institution created by City ordinance when touching upon the same subject matter. *Paddock v. Brisbois*, 35 Ariz. 214, 276 P. 325 (1929) (applying Charter in effect at that time, Phoenix City Council could not enact ordinance giving the Civil Service Board authority given by Charter to the City Manager). PERB's authority is derived exclusively from the Ordinance. PCC §§ 2–209 to 2–221.

¶ 13 The City and appellants agree that under the Ordinance PERB has exclusive jurisdiction to adjudicate unfair labor practice charges. PCC § 2–211(H)(8). Nevertheless, the City contends that the Ordinance limits *when* PERB can exercise this exclusive jurisdiction. The City argues that the language, legislative history, and intent of the Ordinance do not permit PERB to exercise jurisdiction over an unfair labor practice charge when the charging employee has also sought review by the Civil Service Board of the same employee and management conduct.

¶ 14 Appellants argue that the City's reading of the Ordinance, specifically sections 2–211(H)(3) and (8), fails to distinguish between those facts and circumstances relied upon in Lowe's and Brown's disciplinary actions and the conduct of management employees whose actions constitute an unfair labor practice in violation of the Ordinance. Appellants concede that once an employee timely appeals his or her discipline to the Civil Service Board, the employee loses the right to have PERB modify that discipline.[3] They argue, however, that the failure to inform employees of the right to union representation is a separate unfair labor practice that may be independently considered by PERB.

¶ 15 The Civil Service Board generally reviews disciplinary actions to determine if there is "just cause" for the action. The City states that the Civil Service Board's reviews frequently center not only on the disciplined employee's alleged misdeeds, but also allegations of deficiencies and improper conduct by management. If management has acted unfairly, improperly or incompetently, the reviewing board may determine that the imposed discipline should be rescinded or reduced. The City acknowledges that the Civil Service Board will not address unfair labor practice allegations, including violations of *Weingarten* rights, because of PERB's exclusive authority to do so. Nevertheless, it argues that an employee may forfeit his or her right to have PERB hear an unfair labor practice charge by electing to appeal to the Civil Service Board.

¶ 16 Nothing in the Ordinance, City Charter or PERB's rules compels the conclusion that an employee will forfeit the right to have PERB determine whether an unfair labor

---

**3.** After filing appeals with the Civil Service Board regarding the discipline, both Lowe and Brown filed unfair labor practice charges with PERB requesting, among other remedies, that PERB rescind any and all disciplinary action. PERB's decision and order of consolidation dated August 31, 2001, limited the remedy to a Cease and Desist and a Posting Order. We do not give any weight to the fact that Lowe and Brown asked PERB to modify their discipline. PERB correctly recognized that it could not do so.

practice has been committed by seeking the Civil Service Board's review of the "just cause" for a disciplinary action. All events surrounding a particular employee are not necessarily intertwined with the disciplinary action. In this case, the alleged unfair labor practices occurred at the time of the interviews with the employees. The employees could have filed charges with PERB at that time, even if no disciplinary actions were taken. Indeed, in *Weingarten* the employee was interviewed for suspicion of theft without a union representative present, despite having requested one, but no discipline was imposed. 420 U.S. at 254–55, 95 S.Ct. 959. Nevertheless, her union filed an unfair labor practice allegation with the National Labor Relations Board. *Id.* at 256, 95 S.Ct. 959. Here, the employees and the Union could have filed unfair labor practice charges with PERB immediately after the interviews, alleging violations of their *Weingarten* rights. At that time, PERB could not modify any discipline imposed, because there would have been none, but it could have ordered the same cease and desist and posting orders available to it in this case.

■ ¶ 17 In determining legislative intent, one of the factors a court considers is the statute's effects and consequences. *Kaku,* 172 Ariz. at 297, 836 P.2d at 1007. Under the City's interpretation of the statute, once an employee files an appeal with the Civil Service Board, PERB would lose jurisdiction to hear any unfair labor practice charge related to that employee. In effect, the employee would be forced to choose between filing an unfair labor practice charge with PERB and waiving any "just cause" appeal of discipline handed out by the City, or appealing the disciplinary action to the Civil Service Board and waiving the right to file an unfair labor practice charge with PERB.

¶ 18 The City's argument would preclude an employee from alleging a violation of *Weingarten* rights even if the interview did not give management any information it did not already possess, with discipline being imposed based on independent evidence showing "just cause."[4] In such a circumstance, if an employee only sought relief

before PERB, PERB could not adjust the employee's discipline because it was not based on an unfair labor practice. *See* PCC § 2–211(H)(6) and (8) (giving PERB the power to order reinstatement and/or back pay only "in cases which involve unfair labor practices" or a "violation of [the] ordinance"). Nevertheless, according to the City, if the employee instead sought relief from the discipline before the Civil Service Board, which could modify the discipline even in the absence of an unfair labor practice, the appeal to the Civil Service Board would bar the employee from making any unfair labor practice charge to PERB.

¶ 19 In this case, the City acknowledges that there is a dispute concerning whether an employee has a right to be informed of the right to union representation. This issue requires interpreting the Ordinance and the Memorandum of Understanding, and is of importance to all City employees and their representatives. Its resolution will ultimately determine whether a failure to inform constitutes an unfair labor practice. The Union itself joined in filing the charge with PERB and is a party to this appeal. The City acknowledged at oral argument that unions have independently filed charges. We need not decide the scope of the Union's right to file its own charges, but its presence as a party highlights that an unfair labor practice charge is important to more than a single employee. As the Supreme Court stated in *Weingarten:*

> [E]ven though the employee alone may have an immediate stake in the outcome; he seeks 'aid or protection' against a perceived threat to his employment security. The union representative whose participation he seeks is, however, safeguarding not only the particular employee's interest, but also the interests of the entire bargaining unit by exercising vigilance to make certain that the employer does not initiate or continue a practice imposing punishment unjustly.

420 U.S. at 260, 95 S.Ct. 959. Given the City Council's policy that "exclusive authority to determine the existence of an unfair labor

---

4. Appellants allege that this is exactly what happened in Lowe's case.

practice" rests with PERB, it is reasonable for PERB to decide the issue even if it cannot address a particular employee's disciplinary action.

¶ 20 The City argues that the City Council's 1990 rejection of PERB's proposed amendments to the Ordinance shows that the City Council intended to bar PERB's jurisdiction over an unfair labor practice charge in any situation in which the complaining employee filed an appeal with the Civil Service Board. We find this argument unpersuasive. The legislative history provided to us does not clearly reflect that the City Council intended such a result. The amendments adopted by the City Council are not precisely those proposed by either PERB or management.

¶ 21 In the process leading to the 1990 amendments to the Ordinance PERB proposed an amendment to what is now subsection (H)(3) that would have given it "exclusive jurisdiction in adjudicating" violations of the Ordinance "notwithstanding the fact that such violations may also constitute violations of other ordinances of the City of Phoenix." Management's proposed version was close to the amendment that was ultimately adopted, and merely gave PERB authority over claims "for which no appeal has been taken to the City of Phoenix Civil Service Board." The City now argues that the City Council plainly rejected PERB's concern at the time that "[m]anagement's proposed language would leave a party without a remedy if an appeal is filed with the Civil Service Board and it is ultimately determined that the party was terminated due to an unfair practice charge." Although it appears the City Council did not agree with PERB's suggestion that it exercise expansive jurisdiction over unfair labor practices even if they also constituted violations of other City ordinances, the City Council did accept that PERB would have "exclusive authority" over unfair labor practices. It just expressed this intent in a different subsection of the Ordinance.

¶ 22 Management's proposed amendment to what is now subsection (H)(8) would have specified that "except for [PERB's] power to order reinstatement, and/or backpay for demoted, suspended or terminated employees, it" would have "no power to grant a remedy that would in any way intrude upon the charter powers" of the Civil Service Board. The City Council took a different approach by taking some of PERB's suggested language for (H)(3) regarding PERB's "exclusive jurisdiction" to adjudicate violations of the Ordinance, and rewriting it for (H)(8) as "exclusive authority to determine the existence of an unfair labor practice." The City Council gave PERB the "power to order reinstatement ... in cases which involve unfair labor practices," but left in place the limitation that PERB "shall have no power to order affirmative action" that would diminish the Charter powers of the Civil Service Board. The City Council plainly did not entirely adopt either side's position, but expressly recognized PERB's "exclusive authority to determine the existence of an unfair labor practice." The City's argument fails to give adequate weight to this provision.

¶ 23 The legislative history of the Ordinance suggests that the City Council's primary concern when adopting the 1990 amendments was to eliminate potential inconsistent remedies, not to deprive PERB of its authority to adjudicate unfair labor practice charges. The City Council did not want the Civil Service Board and PERB to issue inconsistent orders concerning a single employee's discipline. We believe the language of the amendments accomplished this in subsection (H)(3) by giving PERB authority "to adjudicate a charge for which no appeal has been taken to the City of Phoenix Civil Service Board," and specifying in subsection (H)(9) that PERB "shall have no jurisdiction over any cases involving discipline where timely filed under the City's civil service system."[5] Because an employee may be both the object of a discipline case and the initiator of a distinct unfair labor practice

---

5. Before the 1990 amendments subsection (H)(9) provided that PERB "shall have no jurisdiction over cases involving discipline for any portion of which there is review under the City's Civil Service System." The superior court quoted and relied upon this repealed language in making its conclusions of law.

charge, we conclude that PERB may hear an unfair labor practice charge even when the discipline case is appealed to the Civil Service Board.

¶ 24 The City's reading of the ordinance would render meaningless significant portions of PCC sections 2–211(H)(6), (8), and 2–220(D).[6] The City contends, however, that because PERB has the authority under the Ordinance to rescind discipline, the employee has an option of choosing between the two forums to seek to have his discipline modified or rescinded and therefore an employee is not left without a remedy and PCC sections 2–211(6), (8) and 2–220(D) are not meaningless. We disagree. Under the Ordinance, PERB's authority to modify or rescind discipline is contingent upon a finding of an unfair labor practice. Therefore, if management's alleged conduct has fallen short of an unfair labor practice, the employee may not receive complete relief from PERB because PERB will not determine if there is "just cause" for the discipline. The employee will, however, have forfeited the right to appeal to the Civil Service Board.

¶ 25 The distinction between discipline imposed for "cause" and discipline imposed as a consequence of an unfair labor practice is not unique to the City's system. The National Labor Relations Board has held that "when an employee is discharged or disciplined for cause, that employee will not be entitled to reinstatement and backpay simply because his or her *Weingarten* rights were violated." *Taracorp, Inc.*, 273 N.L.R.B. 221, 224 (1984). "The appropriate remedy for a *Weingarten* violation is an order requiring the employer to cease and desist from further such violations and to post a notice to that effect." *Barnard College*, 340 N.L.R.B. No. 106, n. 12 (Oct. 21, 2003). Nevertheless, "[a] make-whole remedy can be appropriate in a *Weingarten* setting if, and only if, an employee is disciplined, discharged or disciplined for asserting the right to representation." *Taracorp, Inc.*, 273 N.L.R.B. at 224, n. 12.

¶ 26 Applying this distinction to the system adopted by the City, an employee who believes discipline was imposed for asserting his or her *Weingarten* or similar rights pro-

tected under the Ordinance may choose to file a charge with PERB rather than an appeal to the Civil Service Board. In such a case, PERB can give complete relief. In cases in which discipline was imposed for reasons unrelated, or only partly related, to any alleged unfair labor practice, the employee would be better advised to appeal to the Civil Service Board, which can determine whether there was "just cause" for the discipline, and, unlike PERB, can order a modification to the discipline even if no unfair labor practice is established. If, as here, the employee alleges that he or she was the subject of an unfair labor practice, but the discipline was not imposed as a direct result of the unfair labor practice, an employee can take a "just cause" appeal to the Civil Service Board and also file an unfair labor practice charge with PERB. PERB will have no authority to modify the discipline imposed, but may craft some other remedy if it finds an unfair labor practice.

¶ 27 The City is concerned that PERB's remedy might include making findings about the admissibility of evidence before the Civil Service Board, citing the Union's position that evidence obtained in violation of *Weingarten* rights should be excluded from consideration in the discipline process. The City Council seems to have addressed this possibility in the Ordinance by expressly providing that PERB "shall have no power to order affirmative action that would in any way diminish the Charter powers of the City Council, City Manager, Personnel Official, or the Phoenix Civil Service Board." PCC § 2–211(H)(8). Any order by PERB directed to the Civil Service Board regarding its procedures or decisions would likely be barred by this provision.

¶ 28 The City also argues that an employee has alternative forums to address an unfair labor practice allegation if the employee chooses to appeal his or her imposed discipline before the Civil Service Board. For example, the City suggests that an employee could file a Civil Service Board appeal to address the "just cause" determination of the discipline and file a Memorandum of Under-

6. "Written claims of violation of this section shall be adjudicated by the PERB." PCC § 2–220(D).

standing grievance to address the wrongful conduct of the employer. We do not believe City law recognizes the Memorandum of Understanding process as a substitute for filing charges with PERB. Because PERB has exclusive authority to find unfair labor practices, neither the City's grievance procedures nor an appeal to the Civil Service Board will result in a determination whether an unfair labor practice has been committed. Indeed, the Civil Service Board has refused to hear evidence regarding unfair labor practice charges, arguably recognizing PERB's exclusive authority to determine the existence of an unfair labor practice under PCC section 2–211(H)(8).

¶29 Finally, the City argues that PERB may not expand its jurisdiction by voluntarily limiting its remedies in order to retain jurisdiction over an unfair labor practice charge, citing *City of Phoenix v. Phoenix Civil Service Board,* 169 Ariz. 256, 259, 818 P.2d 241, 244 (App.1991). We conclude that PERB did not voluntarily limit its authority, but merely recognized the limitations contained in the Ordinance that it could not exercise jurisdiction over an employee's disciplinary action that had been appealed to the Civil Service Board. *Phoenix Civil Service Board* recognized that a city board may be limited in its review of an individual employee's status, but still have jurisdiction to consider broader employment issues raised by an individual's situation. That is also the case here.

## CONCLUSION

¶30 For the foregoing reasons, we reverse the judgment of the superior court and remand for entry of judgment in favor of the appellants. The appellants have requested attorney's fees, but fail to cite a statutory basis authorizing the award. *See Proctor v. Parada,* 145 Ariz. 203, 700 P.2d 901 (App. 1985) ("Attorney's fees may only be awarded where agreement of the parties so provides or where specifically authorized by statute."). Appellants' request for attorney's fees on appeal is therefore denied. As the prevailing party, appellants are entitled to their costs

upon compliance with Rule 21, Arizona Rules of Civil Appellate Procedure.

CONCURRING: SUSAN A. EHRLICH, Judge and JAMES CHAVEZ, Judge.*

---

* The Honorable James Chavez, Judge of the Mohave County Superior Court, was authorized to participate in the disposition of this appeal pursuant to Ariz. Const. art. VI, § 3 and A.R.S. §§ 12–145 through 147.