NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, LOCAL 2384, *Plaintiff/Appellant*,

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0632
FILED 10-17-2023

———————————————

Appeal from the Superior Court in Maricopa County
No. CV2021-016584
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

———————————————

COUNSEL

Martin & Bonnett, P.L.L.C., Phoenix
By Daniel L. Bonnett, Jennifer L. Kroll
*Counsel for Plaintiff/Appellant*

Osborn Maledon, P.A., Phoenix
By Eric M. Fraser, Andrew G. Pappas
*Counsel for Defendant/Appellee City of Phoenix*

William R. Brown Attorney at Law, Phoenix
By William R. Brown
*Counsel for Defendant/Appellee PERB*

---

**MEMORANDUM DECISION**

---

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

---

C A T L E T T, Judge:

**¶1**          The American Federation of State, County, and Municipal Employees, Local 2384 ("Union") filed an unfair labor practice charge (the "charge") against the City of Phoenix ("City") alleging the City violated the Phoenix City Code ("Code") by failing to meet and confer with the Union about contracting out certain work to a private company.  Because we conclude the Code did not require the City to meet and confer, we affirm the superior court's judgment.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**          The Union and the City entered a memorandum of understanding ("MOU") concerning wages, hours, and working conditions for the Union employees, which was effective from July 1, 2019 to June 30, 2021.  The 2019 MOU required, among other things, the City to "notify the Union, in writing, of the City's intent to contract with a private agency for the provision of municipal services."

**¶3**          The Union filed an unfair labor practice charge with the Phoenix Employment Relations Board ("Board"), alleging the City violated the Code by not meeting and conferring with the Union before contracting out certain work to Felix Construction, Inc. ("Felix").  The Union alleged its member employees could perform the outsourced work.

**¶4**          The Board referred the charge to a hearing officer who held an evidentiary hearing.  The hearing officer issued a report concluding the City violated the Code's meet and confer ordinance.  After the City filed written objections to the report, the Board rejected the hearing officer's conclusion that the City was required to meet and confer.

**¶5**          The Union filed an action in the superior court, seeking special action review of the Board's decision and a declaratory judgment regarding the City's meet and confer obligations.  The Union later filed an amended complaint, which the City moved to dismiss under Arizona Rule

of Civil Procedure 12(b)(6), arguing the ordinance did not require the City to meet and confer with the Union about contracting out to Felix.

¶6　　　　The superior court accepted special action jurisdiction but denied relief on grounds the Code did not require the City to meet and confer with the Union under the circumstances. The court reasoned that "the meet and confer process is specifically identified as a temporary, periodic method by which the parties are intended to finalize a collective bargaining agreement." The court dismissed the complaint.

¶7　　　　The Union timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A).

## DISCUSSION

¶8　　　　We review *de novo* the dismissal of a complaint for failure to state a claim. *Hopi Tribe v. Ariz. Snowbowl Resort Ltd. P'ship*, 245 Ariz. 397, 400 ¶ 8 (2018). We assume the complaint's well-pleaded facts are true and "affirm only if, as a matter of law, the plaintiff[] would not be entitled to relief under any interpretation of the facts susceptible of proof." *Id.* (cleaned up).

¶9　　　　The Code contains an ordinance requiring the City "to meet and confer" about certain subjects "with an authorized representative of the employees[.]" Code § 2-220(A)(5). For example, the Code requires the City to bargain with an authorized employee representative—here, the Union— about "[t]he provisions contained in the 1988-90 and subsequent memoranda of understanding[.]" Code § 2-215(A).

¶10　　　　The parties disagree about the nature and timing of the City's meet and confer obligations. The Union argues "[t]he plain text of the Ordinance mandates that the City's obligation to meet and confer on non-economic items is ongoing and not limited to only meeting and conferring as part of the negotiating process that precedes reaching and finalizing a specific MOU." The City responds that the ordinance instead sets out a specific procedure for meeting and conferring and "[o]nce a memorandum of understanding has been reached, the parties' meet-and-confer obligations under the Ordinance end." We agree with the City.

¶11　　　　We interpret ordinances using statutory interpretation principles. *Thomas & King, Inc. v. City of Phoenix*, 208 Ariz. 203, 206 ¶ 9 (App. 2004). "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so . . . according to the plain meaning of the words in their broader statutory context[.]" *S. Ariz. Home*

*Builders Ass'n v. Town of Marana*, __ Ariz. __, 522 P.3d 671, 676 ¶ 31 (2023); *see also Glazer v. State*, 244 Ariz. 612, 614 ¶ 9 (2018).

**¶12**  The Code's text makes clear that the meet and confer process is the means through which the parties attain a MOU.  The Code defines "meet and confer" as:

> the performance of the mutual obligation of the public employer through its chief administrative officer or his designee and the designees of the authorized representative to meet at reasonable times, including meetings in advance of the budget-making process; *and* to confer in good faith with respect to wages, hours and other terms and conditions of employment or any question arising thereunder, *and* the execution of a written memorandum of understanding embodying all agreements reached[.]

Code § 2-210(11) (emphasis added).

**¶13**  The word "and" is a "conjunction connecting words or phrases expressing the idea that the latter is to be added or taken along with the first." *Bither v. Country Mut. Ins. Co.*, 226 Ariz. 198, 200 ¶ 10 (App. 2010) (citation omitted).  The Code's meet and confer provisions thus require the City and employee representatives to meet *and* confer *and* execute a written MOU containing all agreements reached (if any).  *See City of Phoenix v. Phx. Emp. Rels. Bd. ex rel. Am. Fed'n of State, Cnty. & Mun. Emps. Ass'n, Local 2384*, 145 Ariz. 92, 95 (App. 1985) ("[T]he meet and confer ordinance establishes a procedure whereby City management and employee representatives are expected to negotiate in good faith" and "produce a memorandum of understanding[.]").  Viewing the meet and confer process as the means to attain a particular end (the creation of MOUs) is consistent with a stated and central purpose for that process:  "[T]hat the results of agreements between the employer and the employees *will be drafted into written memoranda of understanding*."  Code § 2-209(4) (emphasis added).

**¶14**  Section 2-218 sets the procedures parties must follow when meeting and conferring to reach a MOU.  It instructs that "[o]n or before December 1 *of any year in which meeting and conferring is authorized by this ordinance and the terms of memorandums of understanding in effect pursuant thereto*, authorized employee organizations shall submit their proposed memorandum of understanding in writing to the City Manager or his designee[.]"  Code § 2-218(B).  The section contains additional procedures, including allowing the Union to present to the City Council and requiring

the City to provide a written response to a proposed MOU. Code § 2-218(C), (E).

¶15 If the parties are unable to "achieve agreement" within a reasonable time, or if a MOU "has not been reached prior to March 1," the parties are required to begin impasse procedures. Code §§ 2-219; 2-210(8) ("*Impasse* means the failure of a designated representative of the public employer and a representative of an authorized employee organization to achieve agreement in the course of meeting and conferring."). Impasse procedures include formal mediation and, if the parties are unable to agree, submitting the issue to the City Council for resolution. Code § 2-219.

¶16 At bottom, the meet and confer ordinance only *requires* the City to meet and confer about certain subjects—primarily those to be addressed in a new or revised MOU—and at certain times. Once an MOU is reached, either amicably or through impasse procedures, the Code's meet and confer process related to that MOU achieves its objective. The mandatory bargaining process under the Code does not begin anew until some period before the term of the MOU expires or as otherwise provided in the existing MOU. *See* Code § 2-218(B); Code § 2-215(B) ("A memorandum of understanding may be executed for a period not to exceed three years."). In the meantime, the existing MOU, including any provision creating an interim obligation to meet and confer, governs the parties' relationship for the duration of its term.

¶17 The 2019 MOU between the City and the Union addressed the parties' interim meet and confer obligations. For example, the 2019 MOU instructed that "[i]f any article or section of this Memorandum should be held invalid . . . the parties . . . , *shall meet and confer* to endeavor to agree on a substitute provision or that such a substitute provision is not indicated." (Emphasis added). Although the 2019 MOU established procedures if the City decided to outsource work, those procedures did not require the City to meet and confer with the Union before doing so. To the contrary, the Union agreed that "[e]xcept as expressly provided in this Memorandum, the City shall not be required to meet and confer concerning any matter, whether covered or not covered herein, during the term or extensions thereof." The 2019 MOU did not stop there. It also provided that because the Union "had an opportunity to raise all matters" during the meet and confer process leading to the 2019 MOU, the Union "is precluded from initiating any further meeting and conferring relative to matters under the control of the City Council or the City Manager." Requiring the City to meet and confer about its agreements with Felix would be inconsistent with the bargain the Union struck in the 2019 MOU.

5

¶18        The Union argues that the ordinance requires the City to provide the Union a "seat at the table" for any outsourcing discussions. If any such requirement existed, it needed to be found in the 2019 MOU. To be sure, the parties included a process in the 2019 MOU for the City to follow before outsourcing work, including requiring the City to provide notice to the Union. The 2019 MOU also provided that the parties would "continue to meet with affirmative willingness to resolve grievance[s] and disputes relating to wages, hours, and working conditions without affecting the terms of" the 2019 MOU. If the City violated any of the 2019 MOU's requirements, the Union could have filed a grievance or requested a meeting to discuss a grievance. But the Code did not require the City to meet and confer about contracting out, at least until the mandatory bargaining process for a subsequent MOU began. This is particularly true considering the Union's agreement that the City was not required to meet and confer during the 2019 MOU's term, and that the Union was precluded from asking the City to do so.

¶19        The Union also argues that because the ordinance exempts the City from meeting and conferring about "economic items" during the budgeting process, the City is required to continuously meet and confer about non-economic items. As the Union explains, the deadline for economic items "allows the City to meet its budget deadlines and determine its financial commitment it is obligated to fulfill under the terms of an MOU." We assume, without deciding, that contracting out work to Felix was a non-economic item. Yet we disagree that the inclusion of a deadline for economic items implicitly created a continual obligation to meet and confer regarding non-economic items.

¶20        The Union's attempt to imply a perpetual meet and confer obligation for non-economic items has at least two flaws. First, the argument is not based on text in the Code but is instead implied from the absence of text in the Code—the absence of a deadline for non-economic items. We agree with the superior court that "*none* of the language contained in [the Code] even remotely suggests that the parties are perpetually obligated to meet and confer regarding *any* particular issue whatsoever." Second, the Union's interpretation conflicts with text in other provisions in the Code—those imposing temporal limitations on the meet-and-confer process. In fact, the Union's position would render those provisions largely meaningless and the City's meet and confer obligations nearly limitless. *See City of Phoenix v. Phx. Emp. Rels. Bd.*, 207 Ariz. 337, 340 ¶ 11 (App. 2004) ("Courts avoid interpreting a statute so as to render any of its language mere surplusage[.]"). Thus, based on the Code's text, we conclude that the meet and confer process—for economic and non-

economic items alike—is a discrete process for completing a memorandum of understanding on mandatory subjects of bargaining. When that process is not ongoing, the parties are bound to follow the MOU in effect at the time, including the grievance and interim meet and confer procedures (if any) contained therein.

**¶21** Lastly, the Union relies on several decisions from state and federal courts addressing the National Labor Relations Act or state analogues. None of those cases, however, address a statute or agreement materially like the Code or the 2019 MOU. Thus, those decisions are inapposite.

**¶22** In sum, under the plain language of the Code and the 2019 MOU, the City was not required to meet and confer with the Union about contracting out with Felix. The superior court was, therefore, correct to dismiss the Union's first amended complaint for failure to state a claim.

## ATTORNEYS' FEES

**¶23** The City has requested its attorneys' fees and costs pursuant to A.R.S. § 12-341.01. We deny the City's request for attorneys' fees but award the City its reasonable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. The Union has likewise requested its attorneys' fees and costs pursuant to A.R.S. §§ 12-348 and 12-341. Because the Union is not the prevailing party, we deny its request.

## CONCLUSION

**¶24** We affirm the superior court's judgment.

